MARY E. SCHLOENDORFF, Appellant, *v.* THE SOCIETY OF THE NEW YORK HOSPITAL, Respondent.

Hospitals — relation between a hospital maintained as a charitable institution and its physicians and nurses is not one of master and servant — operation by surgeon without consent of patient — when hospital not liable to patient for such an operation.

1. The relation between a hospital and the physicians and nurses who serve it is not one of master and servant. A hospital, maintained as a charitable institution for the care and healing of the sick, is not liable for the negligence of its physicians and nurses in the treatment of patients. It remains exempt though the patient makes some payment to help defray the cost of board, and such a payment is regarded as a contribution to the income of the

hospital, to be devoted, like its other funds, to the maintenance of the charity.

2. Every human being of adult years and sound mind has the right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages; except in cases of emergency where the patient is unconscious, and where it is necessary to operate before consent can be obtained.

3. Where a patient went to a hospital for medical treatment and it was determined that a correct diagnosis could not be made without an examination under ether, to which she consented, the hospital is not liable to her because, while unconscious and under the influence of ether, a surgeon, acting under instructions from the physicians who made the examination, operated upon her and removed a tumor without her consent, as a result of which, it is claimed, she suffered intensely and had to undergo other operations.

4. The fact that the patient told the nurses, who prepared her for the examination, and the physician who administered the ether, that she had come merely for an examination and did not want an operation performed, did not constitute notice to the administrative staff of the hospital so that the hospital became a joint tort feasor with the physician who ordered and the surgeon who performed the operation; nor is the hospital liable, because the administrative staff, believing in good faith, and without notice to the contrary, that the order for an operation was a proper one, gave to the operating surgeons the facilities of the surgical ward in which the operation was performed.

*Schloendorff* v. *New York Hospital*, 149 App. Div. 915, affirmed.

(Argued March 11, 1914; decided April 14, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 1, 1912, affirming a judgment in favor of defendant entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Augustus Van Wyck, George J. McDonnell* and *Arthur D. Truax* for appellant. The evidence in this case clearly showed that the defendant violated its contract by operating upon the plaintiff without her consent, and this

question of fact should have been submitted to the jury for its decision. (*Clemence* v. *City of Auburn*, 66 N. Y. 334; *Sheridan* v. *B. C. R. R. Co.*, 36 N. Y. 39; *Colt* v. *S. A. R. R. Co.*, 49 N. Y. 671; *Train* v. *H. P. Ins. Co.*, 62 N. Y. 598; *Pratt* v. *D. H. M. F. Ins. Co.*, 130 N. Y. 206.)

*Austen G. Fox* and *Wilson M. Powell, Jr.*, for respondent. The court was right in holding that the respondent was not liable to the appellant. (*Hordern* v. *Salvation Army*, 199 N. Y. 233; *Ward* v. *St. Vincent's Hospital*, 78 App. Div. 320; *People ex rel. N. Y. Hospital* v. *Purdy*, 58 Hun, 386; 126 N. Y. 679.)

CARDOZO, J. In the year 1771, by royal charter of George III., the Society of the New York Hospital was organized for the care and healing of the sick. During the century and more which has since passed, it has devoted itself to that high task. It has no capital stock; it does not distribute profits; and its physicians and surgeons, both the visiting and the resident staff, serve it without pay. Those who seek it in search of health, are charged nothing, if they are needy, either for board or for treatment. The well-to-do are required by its by-laws to pay $7 a week for board, an amount insufficient to cover the per capita cost of maintenance. Whatever income is thus received, is added to the income derived from the hospital's foundation, and helps to make it possible for the work to go on. The purpose is not profit, but charity, and the incidental revenue does not change the defendant's standing as a charitable institution. (*People ex rel. Society of N. Y. Hospital* v. *Purdy*, 58 Hun, 386; 126 N. Y. 679.)

To this hospital the plaintiff came in January, 1908. She was suffering from some disorder of the stomach. She asked the superintendent or one of his assistants what the charge would be and was told that it would be $7 a week. She became an inmate of the hospital, and after some weeks of treatment the house physician, Dr.

Bartlett, discovered a lump, which proved to be a fibroid tumor. He consulted the visiting surgeon, Dr. Stimson, who advised an operation. The plaintiff's testimony is that the character of the lump could not, so the physicians informed her, be determined without an ether examination. She consented to such an examination, but notified Dr. Bartlett, as she says, that there must be no operation. She was taken at night from the medical to the surgical ward and prepared for an operation by a nurse. On the following day ether was administered, and while she was unconscious a tumor was removed. Her testimony is that this was done without her consent or knowledge. She is contradicted both by Dr. Stimson and by Dr. Bartlett, as well as by many of the attendant nurses. For the purpose of this appeal, however, since a verdict was directed in favor of the defendant, her narrative, even if improbable, must be taken as true. Following the operation, and, according to the testimony of her witnesses, because of it, gangrene developed in her left arm; some of her fingers had to be amputated; and her sufferings were intense. She now seeks to charge the hospital with liability for the wrong.

Certain principles of law governing the rights and duties of hospitals when maintained as charitable institutions have, after much discussion, become no longer doubtful. It is the settled rule that such a hospital is not liable for the negligence of its physicians and nurses in the treatment of patients. (*Hordern* v. *Salvation Army,* 199 N. Y. 233; *Collins* v. *N. Y. Post Graduate Med. School & Hospital,* 59 App. Div. 63, and cases there cited; *Wilson* v. *Brooklyn Homeopathic Hospital,* 97 App. Div. 37; *Cunningham* v. *Sheltering Arms,* 135 App. Div. 178; *Bruce* v. *Central M. E. Church,* 147 Mich. 230; *U. P. R. Co.* v. *Artist,* 60 Fed. Rep. 365; *Hearns* v. *Waterbury Hospital,* 66 Conn. 98; *Hillyer* v. *St. Bartholomew's Hospital,* L. R. [2 K. B. 1909] 820.) This exemption has been placed upon two grounds. The first is that of implied waiver. It is

said that one who accepts the benefit of a charity enters into a relation which exempts one's benefactor from liability for the negligence of his servants in administering the charity. (*Hordern* v. *Salvation Army, supra.*) The hospital remains exempt though the patient makes some payment to help defray the cost of board. (*Collins* v. *N. Y. Post Graduate Med. School & Hospital, supra; Wilson* v. *Brooklyn Homeopathic Hospital, supra; Cunningham* v. *Sheltering Arms, supra; McDonald* v. *Mass. Gen. Hospital,* 120 Mass. 432; *Downes* v. *Harper Hospital,* 101 Mich. 555; *Powers* v. *Mass. Homeopathic Hospital,* 109 Fed. Rep. 294.) Such a payment is regarded as a contribution to the income of the hospital to be devoted, like its other funds, to the maintenance of the charity. The second ground of the exemption is the relation subsisting between a hospital and the physicians who serve it. It is said that this relation is not one of master and servant, but that the physician occupies the position, so to speak, of an independent contractor, following a separate calling, liable, of course, for his own wrongs to the patient whom he undertakes to serve, but involving the hospital in no liability if due care has been taken in his selection. On one or the other, and often on both of these grounds, a hospital has been held immune from liability to patients for the malpractice of its physicians. The reasons that have led to the adoption of this rule are, of course, inapplicable where the wrong is committed by a servant of the hospital and the sufferer is not a patient. It is, therefore, also a settled rule that a hospital is liable to strangers, *i. e.,* to persons other than patients, for the torts of its employees committed within the line of their employment. (*Kellogg* v. *Church Charity Foundation,* 203 N. Y. 191; *Hordern* v. *Salvation Army, supra.*)

In the case at hand, the wrong complained of is not merely negligence. It is trespass. Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon

9

who performs an operation without his patient's consent, commits an assault, for which he is liable in damages. (*Pratt* v. *Davis*, 224 Ill. 300; *Mohr* v. *Williams*, 95 Minn. 261.) This is true except in cases of emergency where the patient is unconscious and where it is necessary to operate before consent can be obtained. The fact that the wrong complained of here is trespass rather than negligence, distinguishes this case from most of the cases that have preceded it. In such circumstances the hospital's exemption from liability can hardly rest upon implied waiver. Relatively to this transaction, the plaintiff was a stranger. She had never consented to become a patient for any purpose other than an examination under ether. She had never waived the right to recover damages for any wrong resulting from this operation, for she had forbidden the operation. In this situation, the true ground for the defendant's exemption from liability is that the relation between a hospital and its physicians is not that of master and servant. The hospital does not undertake to act through them, but merely to procure them to act upon their own responsibility. That view of the relation has the support of high authority. The governing principle was well stated by DURFEE, Ch. J., speaking for the Supreme Court of Rhode Island in *Glavin* v. *Rhode Island Hospital* (12 R. I. 411, 424): "If A. out of charity employs a physician to attend B., his sick neighbor, the physician does not become A.'s servant, and A., if he has been duly careful in selecting him, will not be answerable to B. for his malpractice. The reason is, that A. does not undertake to treat B. through the agency of the physician, but only to procure for B. the services of the physician. The relation of master and servant is not established between A. and the physician. And so there is no such relation between the corporation and the physicians and surgeons who give their services at the hospital. It is true the corporation has power to dismiss them; but it has this power not because they are its servants, but

with notice because of the plaintiff's statements to the physician who administered the gas and ether.   She says she asked him whether an operation was to be performed, and that he told her he did not know; that his duty was to give the gas, and nothing more.   She answered that she wished to tell some one that there must be no operation; that she had come merely for an ether examination, and he told her that if she had come only for examination, nothing else would be done.   There is nothing in the record to suggest that he believed anything to the contrary.   He took no part in the operation, and had no knowledge of it.   After the gas was administered she was taken into another room.   It does not appear, therefore, that this physician was a party to any wrong.   In any event, he was not the servant of the hospital.   His position in that respect does not differ from that of the operating surgeon.   If he was a party to the trespass, he did not subject the defendant to liability.

The conclusion, therefore, follows that the trial judge did not err in his direction of a verdict.   A ruling would indeed, be an unfortunate one that might constrain charitable institutions, as a measure of self-protection, to limit their activities.   A hospital opens its doors without discrimination to all who seek its aid.   It gathers in its wards a company of skilled physicians and trained nurses, and places their services at the call of the afflicted, without scrutiny of the character or the worth of those who appeal to it, looking at nothing and caring for nothing beyond the fact of their affliction.   In this beneficent work, it does not subject itself to liability for damages though the ministers of healing whom it has selected have proved unfaithful to their trust.

The judgment should be affirmed, with costs.

HISCOCK, CHASE, COLLIN and CUDDEBACK, JJ., concur; WILLARD BARTLETT, Ch. J., absent; MILLER, J., not sitting.

Judgment affirmed.