LOUIS FONTANELLA, Respondent, v. THE NEW YORK CENTRAL
RAILROAD COMPANY, Appellant.

First Department, February 21, 1919.

Railroads — hospitals — negligence — liability of railroad company
maintaining emergency hospital in failing to provide prompt
treatment — liability for negligence of assistant station master
in charge of such hospital in failing to send for ambulance —
excessive verdict.

Where a railroad company maintains an emergency hospital in a station
and directs its foreman to take all cases of accident there first so that
employees are in a sense under an implied obligation to go to said place
for emergency treatment, the railroad company may be held liable for
the negligence of its assistant station master in charge of such hospital
in failing to provide prompt emergency treatment.

Where a foreman of said company was brought to the emergency hospital
between nine-thirty and nine-forty-five A. M., with a broken leg, and the
company's physician, whose duty it was to be in attendance at that time,
could not be reached, the failure of the assistant station master to
summon an ambulance until after eleven o'clock, resulting in an infection
necessitating the amputation of the employee's leg, constituted negligence
for which the company may be held liable.

A verdict for $20,000 in such a case is excessive, and the judgment will be
reversed and a new trial granted unless the plaintiff stipulate to reduce
the same to $12,000.

CLARKE, P. J., and LAUGHLIN, J., dissented.

APPEAL by the defendant, The New York Central Railroad
Company, from a judgment of the Supreme Court in favor
of the plaintiff, entered in the office of the clerk of the county
of New York on the 5th day of June, 1918, upon the verdict
of a jury for $20,000, and also from an order entered in said
clerk's office on the 29th day of May, 1918, denying defendant's
motion for a new trial made upon the minutes.

*William Mann* of counsel [*Alex. S. Lyman*, attorney], for the
appellant.

*William G. Cooke* of counsel [*Howard O. Wood* with him on
the brief; *Wood, Cooke & Seitz*, attorneys], for the respondent.

SMITH, J.:

The plaintiff was a foreman for the defendant at work upon
the defendant's property at the intersection of Park Avenue and

Forty-ninth street. While he was at work at a manhole at that place the cover of the manhole fell upon him and broke his leg. He was taken to the emergency hospital of the defendant corporation at Forty-fifth street and Lexington avenue, for emergency treatment. The company had made provision for the regular attendance of a surgeon from ten o'clock in the morning until six o'clock at night and at other hours surgeons were to answer upon call. This accident happened between nine-thirty and nine-forty-five, or very near that time, in the morning. When the plaintiff reached the emergency hospital, which was just after ten o'clock, Dr. Gillespie, whose duty it was to be there at that time, had not arrived; the assistant station master, who seemed to have charge, at once telephoned for him and found that he was not in his office; he also telephoned to a Dr. McLeod, who was one of the company's physicians and whose duty was to be at the hospital from two o'clock until six, and Dr. McLeod was not in his office. This assistant station master endeavored to find one of these physicians at some other place, but was unable to locate them, and finally telephoned to the Flower Hospital for an ambulance to take the plaintiff to that hospital. The surgeon who was connected with the Flower Hospital and who came for the plaintiff swears that that message was not received until after eleven o'clock in the morning. The testimony of the assistant station master is that it was sent between ten-twenty and ten-thirty. The testimony of the surgeon of the Flower Hospital was positive, and he assigned to the jury the reason for his conviction and the jury might well have believed his testimony, that the ambulance from the Flower Hospital was not summoned until after eleven o'clock.

The testimony further shows that immediately upon the happening of such an accident infection sets in; that a wound with this liability to infection requires prompt if not immediate emergency treatment, and that the delay of a few minutes only may permit the development of that infection to such an extent as to require the amputation of the limb in order to save the patient's life. The evidence of Dr. McLeod is that he arrived at the hospital at ten-forty-nine and gave to the plaintiff the necessary emergency treatment within a few minutes thereafter. It seems that the surgeon of the Flower

Hospital was there with the ambulance at nearly the same time, and immediately after the emergency treatment was given the plaintiff was taken to the Flower Hospital. The jury has found upon what the court must deem to be sufficient evidence that the delay of approximately an hour at this emergency hospital permitted this infection so to develop that it became necessary by reason thereof to amputate the plaintiff's leg. This action is brought, not for the original accident, but for the injury arising from the neglect of the defendant to provide prompt emergency treatment, by reason whereof the plaintiff's leg was necessarily amputated. The court submitted to the jury whether the defendant used reasonable care in providing prompt emergency treatment and their finding upon this question was in favor of plaintiff. Provision had been made for a doctor to be in attendance at ten o'clock in the morning. He had been delayed by the failure of his motor car; he was not accessible by telephone, nor was Dr. McLeod, who is united with him in the special service at this hospital. In view of the rapidity of the development of infection and the danger therefrom in the case of such an accident, the jury might well have held that upon the failure to find either Dr. Gillespie or Dr. McLeod, the defendant should at once have called an ambulance from the Flower Hospital, in order that the plaintiff might have emergency treatment as speedily as possible, and that the delay so to do until eleven o'clock, which may be found from the testimony of the surgeon of the Flower Hospital was an unwarranted delay, in view of the impending danger from infection.

The remaining question then is whether the defendant is liable for the negligence of this assistant station master who appears to have been in charge of this emergency hospital on the morning in question. Just how this hospital was supported does not appear in the evidence. It does not appear that the employees paid any part towards its expense or maintenance. The fair inference is that it was furnished by the railroad company, both for its own purposes, to lessen the consequences of an injury suffered by an employee, and for the charitable purpose of affording to such employee the quicker treatment to the end that his injury may be minimized. A communication had been sent by the railroad

company to its foremen, directing them to take all cases of
accident first to the emergency hospital. The following
circular letter was also sent out:

"*September* 12, 1907.

"All Concerned.— I have the following letter from Mr.
Harwood under date of September 10th:—

"' A Hospital has been equipped in the Lexington Avenue
Terminal of the Grand Central Station at which all injured
persons can be treated in cases of emergency. Dr. Sanford,
who is in charge, believes that many lives can be saved in
cases of serious injuries if patients are treated at this point
and avoid the preliminary shock which is often experienced
when a long ambulance trip is necessary before any treatment
can be given. While the facilities are not large, they are very
complete, and almost any form of operation can be performed,
if necessary.'

"I would be glad if hereafter you would see that any
men employed in this department who are injured are taken
to this hospital for treatment.

"Yours truly,

"(SGD) W. F. JORDAN,

"*Mgr. GCT Improvements.*"

The last declaration of law by our Court of Appeals as to the
exemption of a charitable institution from liability for negli-
gence is found in *Schloendorff* v. *New York Hospital* (211
N. Y. 125). In that case Judge CARDOZO, writing for the
court, said: "Certain principles of law governing the rights and
duties of hospitals when maintained as charitable institutions
have, after much discussion, become no longer doubtful. It is
the settled rule that such a hospital is not liable for the negli-
gence of its physicians and nurses in the treatment of patients.
[Citing authorities.] This exemption has been placed upon two
grounds. The first is that of implied waiver. It is said that
one who accepts the benefit of a charity enters into a relation
which exempts one's benefactor from liability for the negli-
gence of his servants in administering the charity. [*Hordern*
v. *Salvation Army*, 199 N. Y. 233.] The hospital remains
exempt though the patient makes some payment to help
defray the cost of board. [Citing cases.] Such a payment is

regarded as a contribution to the income of the hospital to be devoted, like its other funds, to the maintenance of the charity. The second ground of the exemption is the relation subsisting between a hospital and the physicians who serve it. It is said that this relation is not one of master and servant, but that the physician occupies the position, so to speak, of an independent contractor, following a separate calling, liable, of course, for his own wrongs to the patient whom he undertakes to serve, but involving the hospital in no liability if due care has been taken in his selection. On one or the other, and often on both of these grounds, a hospital has been held immune from liability to patients for the malpractice of its physicians. The reasons that have led to the adoption of this rule are, of course, inapplicable where the wrong is committed by a servant of the hospital and the sufferer is not a patient. It is, therefore, also a settled rule that a hospital is liable to strangers, i. e., to persons other than patients, for the torts of its employees committed within the line of their employment. [Citing cases.] "

As I view the case at bar this case comes within neither ground of exemption from liability. Directions had been given that the foremen should bring all those injured first to this emergency hospital. The plaintiff was one of the defendant's foremen. He was still in the defendant's employ. While he might possibly refuse to go to this emergency hospital, nevertheless, he had not the freedom of choice that a stranger would have in going to such a hospital or refusing to go thereto. He was in a sense under an implied obligation to go there for emergency treatment. But whatever that obligation was, to my mind it was clearly lacking in that freedom of choice which should hold the plaintiff to have waived the liability of the defendant for negligent care in providing emergency treatment which is the first ground stated by Judge CARDOZO as a ground of exemption from liability. Upon the second ground of exemption stated in the case cited, it will be noted that the liability herein claimed is not by reason of the negligence of the physician or nurse in the defendant's employ. It is not for negligence in the plaintiff's care, but for negligence in failing to provide any care for a length of time after the plaintiff was taken to the hospital,

sufficient to cause the injuries of which he complains.   None of the cases exempt a charitable institution from liability for all negligence causing injury, even to a patient.   The duty is recognized to exercise care in the selection of a competent physician or nurse, but in the technical service of a physician or nurse, they are deemed as independent contractors, for whose negligence the charitable institution is not responsible.   If there be a duty then to exercise reasonable care in the selection of a physician or a nurse, it would seem to me to follow that the same duty rested upon them to use reasonable care to provide prompt emergency treatment where prompt emergency treatment was necessary.   For the negligence of Dr. Gillespie in failing to get there the trial judge correctly charged the defendant was not liable.   The liability found by the court below has been placed upon the negligence of the assistant station master in charge of this emergency hospital, in failing for an hour to send for an ambulance from the Flower Hospital, that the plaintiff might have prompt emergency treatment.   The duty of this man in charge of this hospital was not a technical duty as is the duty of a physician or nurse, but is in the same class of obligation, as I view it, as is the obligation to use reasonable care to select a competent physician.   In *Glavin* v. *Rhode Island Hospital* (12 R. I. 411) it was held that the hospital was not responsible for the negligence of an interne who had acted as a physician in the absence of the attendant physicians, but it was further held " That in cases where the hospital rules required the interne to summon an attendant surgeon, the interne was the agent of the hospital for this purpose, and the hospital was liable for his omission or negligence." If, failing to procure the attendance of one of the company's two physicians until after noon upon this day, the defendant had neglected to send to the Flower Hospital for an ambulance, it could hardly be argued that the defendant had not violated some duty that it owed to the plaintiff and that it should not be liable for damages caused by a breach of that duty.   A corporation must always act through its agents, and public policy would seem to require that in the providing of prompt service, where prompt service may be vital to the welfare of the patients, as well as in the providing of competent surgical

and nursing attention, such an institution is under the duty of reasonable diligence. Such a duty is not one that can be delegated, but is one which rests primarily and always with the institution, and for the negligence of the assistant station master in failing to provide prompt emergency treatment in the case at bar, I think the defendant was properly held responsible.

We are of the opinion, however, that this verdict is excessive. The plaintiff has his right under the Workmen's Compensation Law (Consol. Laws, chap. 67 [Laws of 1914, chap. 41], as amd.) to recover certain damages. We think that $12,000 would be an abundant recovery to satisfy this liability, and the judgment and order are reversed and a new trial granted on the ground that the verdict is excessive unless the plaintiff will stipulate to reduce the verdict to the sum of $12,000, and if such stipulation be filed, the judgment and order as thus modified may stand affirmed, without costs.

DOWLING and MERRELL, JJ., concurred; CLARKE, P. J., and LAUGHLIN, J., dissented and voted to reverse.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event, unless plaintiff stipulates to reduce verdict to $12,000; in which event the judgment as so modified and the order appealed from are affirmed, without costs. Order to be settled on notice.