GENE PIERSON, an Infant, by DOUGLAS PIERSON, His Guardian ad Litem, Respondent, v. CHARLES S. WILSON MEMORIAL HOSPITAL, Appellant.

DOUGLAS PIERSON, Respondent, v. CHARLES S. WILSON MEMORIAL HOSPITAL, Appellant.

Third Department, March 24, 1948.

*Hinman, Howard & Kattell,* attorneys (*Charles F. Fish* of counsel), for appellant.

*Pearis & Resseguie,* attorneys (*John M. Rennell* of counsel), for respondents.

HILL, P. J. Defendant, a charitable hospital located in Johnson City, Broome County, appeals from two judgments, one in an action brought by the guardian ad litem of an infant who, it is alleged, when two years and three months of age, fell from a crib through the negligence of defendant; the other by the father for loss of services and expenses for medical and surgical attention. The child had a generalized eczema over his head and body, with swollen glands in his neck and behind his ears. He was running a temperature of more than 103 degrees when taken to the hospital as a paying patient. The crib in which he was placed was constructed of rigid metal tubing with movable sides of the same material. The top of the crib was fifty-seven and one-fourth inches from the floor, and twenty-five inches from the upper side of the mattress. Three days after the child was brought to the hospital and immediately following a visit by his father and mother, he climbed over the side of the crib and fell to the floor, receiving injuries.

" Certain principles of law governing the rights and duties of hospitals when maintained as charitable institutions have, after much discussion, become no longer doubtful. It is the

settled rule that such a hospital is not liable for the negligence of its physicians and nurses in the treatment of patients. * * * This exemption has been placed upon two grounds. * * * The second ground of the exemption is the relation subsisting between a hospital and the physicians who serve it. It is said that this relation is not one of master and servant, but that the physician occupies the position, so to speak, of an independent contractor, following a separate calling, liable, of course, for his own wrongs to the patient whom he undertakes to serve, but involving the hospital in no liability if due care has been taken in his selection. * * * It is true, I think, of nurses as of physicians, that in treating a patient they are not acting as the servants of the hospital. The superintendent is a servant of the hospital; the assistant superintendents, the orderlies and the other members of the administrative staff are servants of the hospital. But nurses are employed to carry out the orders of the physicians, to whose authority they are subject. The hospital undertakes to procure for the patient the services of a nurse. It does not undertake through the agency of nurses to render those services itself.'' (*Schloendorff* v. *New York Hospital,* 211 N. Y. 125, 128, 129, 132.) The same doctrine has been announced in more recent cases. (*Sheehan* v. *North Country Community Hospital,* 273 N. Y. 163; *Lee* v. *Glens Falls Hospital,* 265 App. Div. 607, affd. 291 N. Y. 526; *Ranelli* v. *Society of New York Hospital,* 295 N. Y. 850.)

The plaintiffs-respondents argue that these appeals may be distinguished from the general rule of lack of liability because the father testified; '' The first day when I took him into the room and placed him in bed, looking the surroundings over I was afraid, he being an aggressive child and exceptionally active * * * I asked the nurse to put something on the child to hold him in bed. * * * I think her name was Mrs. Scott. * * * She was the head nurse on the floor. Q. What did she tell you at that time? A. She told me; all right, she would attend to it, she would take care of it, that she would put something on him to hold him in. Q. Did she say how she would hold him in, or anything about that? A. It was to be a jacket with long strings that would tie through under the bed. Q. That is what you understood? A. That is what I understood. She described some restraint, and that is the way it was pictured to me. Q. Did she agree with you when you asked her about that? A. Yes sir; she was very pleasant and very agreeable. * * * Q. Do you remember what the words were, or substantially what they were? A. I asked

her to put something on him to hold him in bed, and she said she would take care of it and see that it was done." This statement is corroborated by the mother of the infant. The nurse, Mrs. Scott, testified that she did not recall such a conversation and that it was her best recollection that it did not take place, however, the jury having found in favor of the plaintiffs, we must accept the evidence most favorable to them.

Respondents invite us to find that the nurse did exercise her professional judgment as indicated by the father's testimony concerning the necessity for additional restraint and the failure to apply the restraint involved negligence of the nurse while she was acting as a servant for the administrative head of the hospital.

While the father's testimony must be regarded as true, the denial by the nurse of the conversation is strengthened by the conceded fact that the father and mother three days later came to see the child, found him standing up restrained only by the sides of the crib which were about even with his chin, and after a time left without further discussion as to additional restraint. The child fell about fifteen seconds after they left.

A physician who was a member of the staff of several hospitals in the vicinity, but not of the defendant, testified from an examination of the bedside notes and other records that in his opinion there was no necessity for restraint beyond that furnished by the height of the walls of the crib. The supervising nurse of the pediatrics ward was asked, " Q. Does the record indicate, or from your knowledge of the facts in this case was there anything to indicate to you, that the condition of the child was such that he should be tied down to the bed? A. No, there was not. He had a high fever, he was very listless and drowsy most of the time, and we did not restrain him for that reason." And again, " Q. Is there any order on that note, from the doctors, or on the doctor's order sheet, directing that restraints be applied to the boy at that time? A. No."

The evidence in this case does not warrant a finding that a professional determination had been made by the receiving nurse or any other nurse or physician that additional restraint was necessary, making the failure to apply such paraphernalia an administrative act, for which defendant was chargeable. (*Schloendorff* v. *New York Hospital*, 211 N. Y. 125, *supra*.) Under the independent contractor theory, the same conclusion would be reached if we assume that the receiving nurse was in error in her professional judgment in failing to use additional restraints. For such failure the hospital would not be liable.

In the *Schloendorff* case somewhat similar remarks of a nurse were classified as sympathetic and soothing to a sick woman, and without medical significance; the statement by the nurse as testified to by the father likewise might be classified as an attempt to be pleasant and to placate a somewhat distraught parent, and not as evidence of a decision on a medical subject.

The judgment should be reversed on the law and facts, without costs.

BREWSTER, J. (dissenting). I cannot agree that, as a matter of law and within the rule of the *Schloendorff* v. *New York Hospital* (211 N. Y. 125) case, the evidence fails to establish that the child's injuries were occasioned by negligence on the part of the respondent hospital in the performance of the duties of its administrative functions in that the conduct of its nurses and attendants in failing to have so restrained the child, or otherwise cared for him so as to have prevented the accident, was within that scope of professional action wherein the relationship of their servitude to the defendant did not exist.

There is little or no evidence, and at least none which is decisive as a matter of law, that the manner and means which were employed in keeping the child in his crib were related to his treatment for what ailed him. On the contrary, the evidence is that despite his illness he was naturally so active and aggressive that he crawled over and scaled the top of his enclosure and in falling was injured. It was his natural traits and abilities in that regard, unrelated to his illness, which gave rise to his father's warnings and request for specific restraints which, although promised, were not furnished. The head nurse, with whom the father dealt in that matter, testifid on direct examination that at no time prior to the accident did she form any opinion that the child needed restraint. She said she had no recollection that the father requested it or that she promised it, and that her best recollection was that he did not. I fail to see how that testimony, or the testimony of others to the effect that no restraints were professionally prescribed, is any evidence of professional conduct. I agree that had there been a decision by a nurse or doctor upon the question as to whether restraints were to be employed, and such formed a part of or was related to the professional care and treatment of the child for his malady, that then such would constitute professional conduct. But the defendant's evidence is that no such decision was made, and ex post facto opinions given at the trial did not alter the situation as of the time of the accident. Moreover, I doubt whether the question of keeping this child in his crib in

such manner as to avoid the danger of his falling out, is a matter for expert opinion. It seems to me that any experienced mother could judge of that as well as a doctor or a nurse. I think the evidence made a case where it may be said that the conduct, 'out of which the tort arose, was in the performance of duties which were administrative functions on the part of the defendant, akin to the matter of selecting and maintaining the room and its equipment for the safe keeping of the child in general — indeed, akin, also, in administrative functions, to the safe keeping of a convalescent while being transported home in an ambulance. (*Sheehan* v. *North Country Community Hospital*, 273 N. Y. 163.) In *Ranelli* v. *Society of New York Hospital* (295 N. Y. 850) a professional decision to provide restraints upon a patient in bed was made, and such decision was related to the condition of the patient and incident to professional care and treatment. However, the subsequent failure to provide the physical means of restraint was held to be an administrative function, for which the hospital was liable. If we take another view of the case at bar and hold that the testimony of the child's parents established that a professional decision was made to provide restraint, then the failure to have provided it was an administrative act within the rule of the *Ranelli* case.

The judgment appealed from should be affirmed.

HEFFERNAN, FOSTER and DEYO, JJ., concur with HILL, P. J.; BREWSTER, J., dissents, in a memorandum.

Judgment reversed, on the law and facts, and complaint dismissed, without costs.