In the Matter of M. M. SLOCUM et al., Copartners, Doing
Business as SLOCUM-DICKSON CLINIC, Appellants.
EDWARD CORSI, as Industrial Commissioner, Respondent.

Third Department, March 24, 1948.

*William S. Pettit,* attorney (*Charles E. Lapp, Jr.,* of counsel), for appellants.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Solicitor-General,* and *Francis R. Curran, Assistant Attorney-General,* of counsel), for respondent.

HILL, P. J. This is an appeal by a medical partnership called " Slocum-Dickson Clinic " from a decision of the Unemployment Insurance Appeal Board which assessed and required appellant to pay additional contributions on account of sums which Drs. Kendrick, Willis and Slater received from the clinic during the calendar years 1943, 1944, and 1945. The board found that the sums were paid as wages. The appellants' position is that the doctors were partners and not employees. The record is not too informative. It consists of letters, opinions and decisions of which the Industrial Commission, the referee and the Appeal Board of the Department of Labor are the authors, the copartnership agreement between the doctors, and a dialogue participated in by the senior hearing representative, the senior payroll examiner of the Labor Department and an attorney representing the clinic, also profit and loss statements and an inventory of assets of the clinic and individual members for the three years mentioned. From the foregoing it appears: That Drs. M. M. Slocum, W. B. Dickson and C. S. Dickson formed a copartnership to do business as the Slocum-Dickson Clinic. The following excerpt is taken from the partnership agreement: "However, until further action, the participation in the assets and income of the partnership shall be equal, as follows: Dr. M. M. Slocum — 12/36ths (referred to as 12 shares); Dr. W. B. Dickson — 12/36ths (referred to as 12 shares); Dr. C. S. Dickson — 12/36ths (referred to as 12 shares).

All expenses or liabilities incurred in the practice of the partnership shall be paid out of the assets of the partnership; but if the same shall not be sufficient, then by the members individually in the same proportion as they participate in the partnership ", and further, " New members may be admitted to the partnership from time to time upon such terms and conditions as may be agreed upon by the unanimous vote of all existing members."

From the dialogue this appears: " Mr. Sitkin [senior hearing representative]: And, it is conceded also, that these alleged partners have received from the corporation only those —

" The Referee: From the what?

" Mr. Sitkin: From the employer only those drawings which have been fixed in their limited partnership and which is fixed at $3,600 a year? Is that right Mr. Pettit?

" Mr. Pettit [attorney for appellants]: Yes.

" Mr. Sitkin: I believe, Mr. Referee, that the record should be clarified further to show that in the limited partnership agreement paragraph 2 (c) had an insertion of the figures $3,600 on the third line, before the words, ' Per annum '. As Mr. Petit has explained, these alleged limited partners are guaranteed a minimum amount per year of $3,600 with a possibility of greater earnings as provided for under the following paragraph (d)."

The place of residence of the general partners was, Slocum, Barneveld, New York, the two Dicksons, New Hartford, New York. The place of residence of the limited partners was, Willis, Utica, New York, and Slater, Clinton, New York. Dr. Kendrick's residence was not disclosed. There seems to have been another limited partner, but he is not discussed or considered except in the profit and loss statement where it appears that Dr. H. G. Stevenson, Utica, New York, received $600 in 1944.

The records indicate that some of the partners practiced medicine and others surgery, the latter apparently at Utica where the clinic was located, with the practitioners of medicine working partly in Utica and partly in the places of their residence. For the year 1943, the general income from medical practice was slightly over $40,000, from surgery about $61,000; in 1944, medical more than $46,000, surgical nearly $63,000; 1945, medical $50,000, surgical $61,000. The drawings by the general partners were as follows: Dr. M. M. Slocum, 1943, $26,000; 1944, $21,000; 1945, $21,000; Dr. C. S. Dickson drew a like amount each year. For two of the years Dr. W. B. Dickson

received $6,500, and for one year $7,500. Dr. T. D. Kendrick appears to have participated in distribution of profits in 1943, only, when he received $2,000. The limited partners drew: Dr. F. J. Slater, Clinton, New York, 1943, $7,000; 1944, $10,900; 1945, $10,900; Dr. Willard H. Willis, 1943, $2,100; 1944, $1,300; 1945, $1,500. Some of the foregoing receipts are approximate.

There is no evidence which would indicate that the relation of employer and employee existed between the special and general partners.

The relation between a physician and a hospital or a clinic which he serves is not one of master and servant. A physician identified with a central body like a hospital or clinic occupies the position of an independent contractor, '' following a separate calling, liable, of course, for his own wrongs to the patient whom he undertakes to serve ''. (*Schloendorff* v. *Society of New York Hospital,* 211 N. Y. 125, 129.) There are numerous other later cases which enunciate the same doctrine. (*Lee* v. *Glens Falls Hospital,* 291 N. Y. 526; *Sheehan* v. *North Country Community Hospital,* 273 N. Y. 163; *Mills* v. *Society of New York Hospital,* 270 N. Y. 594, affg. 242 App. Div. 245.)

The decision of the Unemployment Insurance Appeal Board is reversed on the law and facts, with costs and disbursements.

BREWSTER, FOSTER, RUSSELL and DEYO, JJ., concur.

Decision of the Unemployment Insurance Appeal Board reversed, on the law and facts, with costs and disbursements.