Van Voorhis, J.
Plaintiff sued two physicians and the City of New York for damages from malpractice alleged to have occurred while he was a patient in a hospital operated by the *522 city. One of the defendant doctors was not served with the summons, and the complaint was dismissed at Special Term against the other doctor. Plaintiff proceeded to trial against the City of New York as the sole defendant, basing his claim to liability on section 50-d of the General Municipal Law. It was conceded that the doctors who attended plaintiff were supplied by and were on the regular paid staff of this public hospital, and that in this sense they did not render their professional services to plaintiff gratuitously. For that reason, the complaint was dismissed against the city, and from the judgment entered thereon plaintiff appeals. It appears that plaintiff has paid nothing for his care, and that nothing was spoken about payment when he entered the hospital. Whatever obligation he may have undertaken to pay the city for his care is prescribed by the applicable statutes. There was no separate financial arrangement between the patient and the attending physicians or nurses, and whatever payments they received or are to receive come from the city which maintains the hospital.
• The law is settled that in the absence of statute the relation between a hospital and the physicians and nurses who serve there is not one of master and servant, and that it is not liable for their negligence in the treatment of patients. (Schloendorff v. New York Hosp., 211 N. Y. 125; Phillips v. Buffalo Gen. Hosp., 239 N. Y. 188.) Plaintiff sought to hold the City of New York, as has been stated, under section 50-d of the General .Municipal Law, the pertinent provisions of which are as follows:
‘1 § 50-d. Municipal liability for malpractice of certain physicians and dentists in public institutions.
‘ ‘ Every municipal corporation, notwithstanding any inconsistent provision of law, general, special or local, shall be liable for, and shall assume the liability, to the extent that it shall save him harmless, of any physician or dentist rendering medical services or dental services, of any kind gratuitously to a person in a public institution maintained in whole or in part by the municipal corporation, or in the course of a home care service maintained by such public institution, for damages for personal injuries alleged to have been sustained by such person by reason of the malpractice of 'such physician or dentist while engaged in the rendition of such services. Every such physician or dentist, for the purpose of this section, shall be deemed an employee of the municipal corporation, so maintaining such institution, notwithstanding that the municipal corporation derived no special benefit in its corporate capacity.” This statute, enacted in its original form by chapter 483 of the Laws *523 of 1937, appears to have been adopted for the purpose of indemnifying physicians and dentists who have rendered professional services gratuitously in public institutions against claims for malpractice. Plaintiff contends that it makes the rule of respondeat superior applicable to the city for negligence of these physicians unless he paid the city or these physicians for medical services rendered. The city takes the position which has been sustained by the trial court, that the word “ gratuitously ’ ’, as used in this statute, refers to whether these doctors were working- for nothing rather than to whether plaintiff was to recompense the city for care and treatment which he received at this city hospital. The city’s interpretation is the more natural one. In fact, under section 104 of the Social Welfare Law and section 130 of the General Municipal Law, patients or designated relatives are legally obligated to pay if they are discovered to have real or personal property, and no binding agreement could be made by the city to care for them gratuitously., Section 104 specifically provides that “ Any public assistance or care ”, if the person has property, “ shall constitute an implied contract ” to pay for assistance and care received. If the person accepting assistance and care from the municipality is without funds or other tangible assets he will not be denied treatment, but if, at any time within the ten years next ensuing (Administrative Code of City of New York, § 603-9.0) he acquires real or personal property, he is subject to an action on behalf of the city to recover for. the services rendered. An action for malpractice must be commenced within two years (Civ. Prac. Act, § 50), and within one year if negligence is imputed to the City of New York (Administrative Code, § 394a-1.0). It can hardly have been the intention of the Legislature, in enacting section 50-d of the General Municipal Law, to require a patient’s right to recover in an action for malpractice to depend upon circumstances which might not be ascertainable until the lapse of ten years. These statutes provide, in effect, that there shall be no nonpaying patients in public hospitals who possess the ability to pay, or who within ten years afterward acquire property from which payment can be made, or whose near relatives have the ability to pay for them. The word “ gratuitously ” does not fit into this connection. It connotes possibility of knowing at the time when services are rendered whether they are rendered freely or not, and manifestly was not intended to describe the relationship between a patient and a public hospital inasmuch as the statutes prohibit gratuitous care of patients capable of paying. On the *524 other hand, there is no statute which prevents a doctor from donating his services to a municipal hospital, as many do. It can be ascertained at the time whether a doctor is working under an agreement whereby he is to be paid by the city, or whether he is supplying his professional services without charge. The application of section 50-d of the General Municipal Law depends upon whether the doctor is working gratuitously, and not upon whether the city can collect within ten years from the patient or his relatives. Moreover, it would have been incongruous for nonpaying patients to have been accorded greater rights in suing for malpractice than those of patients who pay for their care. “ It has been held that the fact that a physician or surgeon renders services gratuitously does. not affect his duty to exercise reasonable and ordinary care, skill and diligence ” (Du Bois v. Decker, 130 N. Y. 325, 332), but this does not mean that discrimination was intended in favor of patients paying nothing. If the doctor is paid or to be paid by the city, then, regardless of whether the patient reimburses the municipality, he may sue the doctor untrammeled by section 50-d of the General Municipal Law (cf. Derlicka v. Leo, 281 N. Y. 266, Administrative Code, § 394a-1.0, and Ottmann v. Village of Rockville Centre, 275 N. Y. 270).
The true object of this statute was evidently to encourage physicians and dentists to donate their services rendered to patients in public institutions by indemnifying them against claims for malpractice. Doctors in public hospitals fall into two categories, those who are on the paid permanent staff, and others who have no connection with the hospital except that they voluntarily and gratuitously offer their services in the treatment and care of the sick and maimed. In this second category are many of the leading practitioners and specialists in the medical profession. These eminent physicians, whose services are offered without thought of compensation, are continually exposed to the hazard of action against them for real or fancied malpractice. In the absence of statute, the municipality is not itself liable for the negligence of these physicians and may not, even if so inclined, indemnify them in the event of an adverse judgment. The purpose of section 50-d of the General Municipal Law was to remedy this situation by transferring to the municipality the burden of potential liability to which such physicians had theretofore been exposed. •
In cases where the services have been rendered gratuitously by the physician or dentist, it appears to have been the intention of section 50-d to enable the patient to sue the city directly, thus *525 avoiding the circuity of action involved in suing the doctor first and then permitting him to recover over against the municipality. That appears to have heen provided for by the last sentence of the paragraph above quoted, that “ Every such physician or dentist, for the purpose of this section, shall be deemed an employee of the municipal corporation, so maintaining such institution, notwithstanding that the municipal corporation derived no special benefit in its corporate capacity.” (Italics supplied; cf. Derlicka v. Leo, 281 N. Y. 266, supra.) The word “ such ” before “ physician or dentist ”, refers to those rendering* professional services gratuitously in public institutions, and indicates that the rule of Schloendorff v. New York Hosp. (211 N. Y. 125, supra), and Phillips v. Buffalo Gen. Hosp. (239 N, Y. 188, supra), forbidding the application of the doctrine of respondeat superior is modified by section" 50-d only where the professional services are freely given.
The judgment appealed from should be affirmed, with costs.
Peck, P. J., Glennon, Callahan and Shientag, JJ., concur.
Judgment unanimously affirmed, with costs. [See 278 App. Div. 569.]