552 So.2d 60 (1989)
Marjorie K. GUIN, Plaintiff-Appellant,
v.
Dr. Graciano P. SISON, Jr., and LAMMICO, Defendants-Appellees.
No. 88-727.
Court of Appeal of Louisiana, Third Circuit.
November 8, 1989.
Lloyd E. Hennigan, Jr., Jena, for plaintiff-appellant.
Hudson, Potts, Jesse D. McDonald, Monroe, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and FORET, JJ.
DOMENGEAUX, Judge.
Marjorie K. Guin filed this medical malpractice suit against Dr. Graciano P. Sison, Jr. and his insurer, LAMMICO, following exploratory abdominal surgery on November 22, 1982. Guin alleged that Dr. Sison committed malpractice in the diagnosis and surgical treatment of her condition. She *61 further alleged that he committed a battery on her person resulting in permanent injury and damages. The jury found no negligence or malpractice on the part of Dr. Sison and determined that Mrs. Guin properly consented to the surgery performed. Accordingly, judgment for defendants was entered. Guin appeals and we reverse.
Marjorie Guin consulted Dr. Patrice Flaherty, a general practitioner in Urania, Louisiana, in November of 1982 for pain in her left side and stomach area. Dr. Flaherty performed tests which revealed a narrowing of the splenic flexure of the colon, a finding which is sometimes indicative of colon cancer.
Dr. Flaherty consulted with Dr. Sison, a general surgeon, who recommended exploratory abdominal surgery and a colonoscopy. A colonoscopy is a procedure which facilitates viewing the inside of the colon through a flexible, lighted tube which is inserted through the rectum. Dr. Sison informed Guin of the possibility that a portion of her colon may have to be removed, a procedure referred to as a colectomy. Guin authorized the performance of the recommended procedures by signing a consent form which contained the following language: "Abdominal explorationposs. colonoscopy and poss. L. colectomy."
Dr. Sison performed the exploratory surgery and colonoscopy on November 22, 1982. Mrs. Guin did not have colon cancer, but three other conditions were revealed: a diaphragmatic hernia, chronic inflammation of a diverticulum of the descending colon, and adhesions of the left fallopian tube and ovary. Because the hernia would have to be repaired through an incision in the chest cavity rather than through the abdomen, Dr. Sison was not able to correct the first condition. Concerning the second problem, Dr. Sison removed the inflammed diverticulum and determined that it was the site of chronic infection, probably contributing to Guin's history of abdominal pain. Finally, when confronted with the swollen left tube and ovary which had grown together, Dr. Sison determined that the condition contributed to her pain and he removed both. The doctor's testimony reveals that he knew Guin was several years post-menopause and both the tube and ovary were completely nonfunctional, i.e. not producing eggs or estrogen.
In the two months subsequent to surgery, Mrs. Guin was hospitalized four times with severe abdominal pain, fever, and diarrhea. She was treated by two physicians in Natchez, Mississippi, and was diagnosed as having diverticulitis, an inflammation of the diverticulum which lines the colon. Diverticulosis is a term which describes merely the presence of small pockets called diverticula; when the pockets become infected, the condition is called diverticulitis.
The record indicates that Mrs. Guin did not have diverticulitis at the time of Dr. Sison's surgery. She did have diverticulosis, and Dr. Sison removed one diverticulum which showed signs of prior inflammation. The Mississippi physicians testified that diverticulitis can come and go, and the fact that Mrs. Guin did not show any indications of the disease on November 22, 1982, but was then hospitalized with an acute case just a few weeks later is consistent with the nature of the disease.
Mrs. Guin's diverticulitis was initially controlled with antibiotics, but after her third attack in two months, she chose to undergo surgery in Mississippi on January 28, 1983, for the removal of a large segment of her colon. The surgeon was able to correct Guin's diaphragmatic hernia during the same operation. Guin's recovery has progressed satisfactorily since that time.
The record reveals, and the jury found, no evidence of negligence or malpractice on the part of Dr. Sison. He performed surgery at a time when Mrs. Guin was essentially asymptomatic. He located and attempted to correct three conditions which he believed to be the causes of Guin's history of sporadic pain. The expert testimony indicates that the surgery was properly performed. The jury's factual determination is supported by the evidence.
The question remaining, then, is whether Dr. Sison committed a battery upon Mrs. Guin when he performed an operation, albeit *62 skillfully, to which she had not consented. The record unequivocally established that Mrs. Guin did give informed consent to exploratory abdominal surgery, a colonoscopy, and a possible colectomy. She did not, however, give her consent, informed, implied, or otherwise, to the removal of her left tube and ovary.
In Pizzalotto v. Wilson, 437 So.2d 859 (La.1983), our Supreme Court established the rule that a physician may not act beyond his patient's authorization, except when a situation seriously threatens the health or life of the patient. That exception represents the one instance in which a patient's consent will be implied. The doctrine of informed consent plays no part in a medical battery case because the very nature of a medical battery involves a procedure not contemplated or anticipated by the patient; the patient has been given no information on which to base any consent at all. Conversely, informed consent cases are those which involve a patient who is aware of the procedure to be performed but does not know the risks of that procedure.
In Pizzalotto, the plaintiff consented to an exploratory, conservative operation to burn adhesions which had entangled her reproductive organs. Instead the surgeon performed a total hysterectomy. The Supreme Court found that a battery was committed even though the hysterectomy was reasonably necessary at the time of surgery. Notwithstanding the fact that the plaintiff's condition in Pizzalotto had already rendered her sterile and that she would have to undergo a hysterectomy within six to eight days in order to avoid danger to her health, the Court nevertheless determined that the performance of a hysterectomy without consent constituted a battery.
While we may be more inclined to agree with the rationale of the two dissenting opinions in Pizzalotto, we cannot ignore the majority's mandate under the facts before us. We are therefore compelled to apply the medical battery rule as established by the Pizzalotto court. In Mrs. Guin's case, the record contains no facts which indicate implied consent due to a life threatening situation. In fact, Dr. Sison testified that he could have left the tube and ovary in place without great risk to Mrs. Guin. His belief that the tube and ovary were a site of chronic infection does not, under Pizzalotto, legally justify his removal of those organs without his patient's consent. Consequently, if the medical condition of the Pizzalotto plaintiff was insufficient for a finding of implied consent, it is insufficient in the case before us.
We do not intend for today's decision to represent a stranglehold on conscientious physicians like Dr. Sison whose job it is to make their patients better in whatever way is necessary. We have found, however, that the medical battery doctrine is well established and apparently workable in other jurisdictions. Cobbs v. Grant, 8 Cal.3d 229, 502 P.2d 1, 104 Cal.Rptr. 505 (1972); Schloendorff v. Society of New York Hospital, 211 N.Y. 125, 105 N.E. 92 (1914). Furthermore, the doctrine has been discussed favorably in authoritative treatises. See Prosser, Law of Torts, 4th Ed. Ch. 2 § 9.
We now turn to the question of damages. We have already noted that Guin did not prove any negligence or malpractice on the part of Dr. Sison. The record indicates that the surgery was performed in an acceptable manner. It is also clear that Guin did not undergo a surgical procedure that was any more complex or serious than the one to which she had consented. Further, the removal of her tube and ovary had no bearing on her recovery or post-surgical pain. Guin is therefore not entitled to damages for any physical suffering.
We must, however, award Guin damages for the battery, the removal of her left tube and ovary without her consent, and for her self professed shock at the disclosure that her organs had been removed, albeit five years post menopause. Pizzalotto mandates it. We have carefully examined the entire record and find that an award of $1,000.00 will adequately compensate her for the actual damage she had *63 sustained. She has suffered no greater loss than this.
It is ORDERED, ADJUDGED, AND DECREED that the judgment of the trial court is reversed. Judgment is hereby rendered in favor of Marjorie K. Guin and against Dr. Graciano P. Sison, Jr. and his insurer, LAMMICO, in solido, in the sum of $1,000.00 plus interest and costs.
REVERSED AND RENDERED.