Hancock, Jr., J.
(concurring). I cannot agree with the majority that the right to refuse medical treatment is absolute in the absence of a legislative enactment "manifesting”, with particularity, a countervailing societal interest in the preservation of life or the protection of affected third parties. Specifically, I cannot agree that the State has no cognizable interest in the administration of a lifesaving blood transfusion to an otherwise healthy mother of an infant child who objects to such treatment, simply because that interest has not been "expressed” in a "law or regulation” or "decision from this court” (see, majority opn, at 230).[1] For this reason, I do not join in the majority’s opinion. I join in the result, however, because I agree that Supreme Court should have given the patient, or her husband, notice and an opportunity to be heard prior to deciding whether to grant the order requested by the hospital.
This court is unanimous that, under long-established common-law principles, every "human being of adult years and sound mind has a right to determine what shall be done with his own body” (Schloendorff v Society of N. Y. Hosp, 211 NY 125, 129), including the right to be free from unwanted bodily invasion from medical procedures (see, Matter of Westchester County Med. Center. [O’Connor], 72 NY2d 517, 528; Rivers v Katz, 67 NY2d 485, 492; Matter of Storar, 52 NY2d 363, 377). It is with respect to the nature and extent of this right that I differ with the majority view. For reasons which follow, I do *236 not believe the right to be absolute as the majority opinion describes it to be.
Like a person’s desire to be let alone and to be free from unwanted intrusions, the intuitive sense of the importance of life and of its preservation is instinct in mankind’s very nature. Just as the common law recognizes the right to determine what shall be done with one’s own body, so also does it recognize that there are qualifications or limitations which reflect fundamental counterbalancing interests. Among these are society’s interests in preserving life and in protecting the well-being of the patient’s minor children, as well as that of other potentially affected third parties. Moreover, the due process liberty interest asserted on the basis of Rivers v Katz (supra) is, as it is defined in that decision, no more than "coextensive” with the corresponding common-law right (id., at 493) and, thus, is similarly limited in scope and necessarily qualified by these same paramount societal concerns. The majority, however, holds that these counterbalancing societal interests are disregarded in the stark rule on which it decides this case, because the State has somehow failed to "manifest” a recognition of them.
The Legislature might have given effect to such countervailing interests, the majority points out, but it has not seen fit to do so. Thus, according to the majority, the right to refuse treatment is absolute. It is not qualified by any interest inherent in the common-law rule itself or by one which the State has legislatively "manifested”. Consequently, a physician must even withhold treatment which is necessary to save a patient’s life and to restore her to good health if — irrespective of any other considerations — the patient does not wish it.[2]
In my opinion, such an unqualified right to refuse medical treatment does not exist in the common or constitutional law of this State. The majority’s rule — which gives a healthy competent adult the absolute right to refuse a routine, safe and painless lifesaving procedure — cannot be predicated on anything in the decisions relied upon. There is certainly nothing in Schloendorff suggesting that the right to determine *237 what shall be done with one’s own body is unlimited. The decision in Schloendorff concerned a patient’s suit for damages over nonconsensual surgery. There is no indication that the treatment was necessary to save the patient’s life or that the common-law rule would be applicable under such a circumstance. Nor can an unqualified right be found in Rivers v Katz (supra). Our decision in that case, which involved the constitutional right of inmates in State mental facilities to refuse drug therapy, gave no suggestion of an unqualified right to reject lifesaving treatment. Finally, there was no suggestion of such unqualified right in the rule as stated in either Matter of Westchester County Med. Center (O’Connor) (supra) or Matter of Storar (supra), both of which involved artificial life-support measures for incompetent, debilitated, elderly patients for whom the benefit of continued treatment was questionable.
Further, the decisions of other courts typically recognize the existence of several societal interests to be balanced against a patient’s right of refusal. The four generally cited are: (1) the preservation of life, (2) the protection of third parties, (3) the prevention of suicide, and (4) the protection of the ethical integrity of the medical profession (see, e.g., Commissioner of Correction v Myers, 379 Mass 255, 399 NE2d 452, 456; Superintendent of Belchertown State School v Saikewicz, 373 Mass 728, 370 NE2d 417, 425; In Re Gardner, 534 A2d 947, 957 [Me]; Kennedy Mem. Hosp. v Heston, 58 NJ 576, 279 A2d 670, 673; Matter of Conroy, 98 NJ 321, 486 A2d 1209, 1223; Application of President & Directors of Georgetown Coll., 331 F2d 1000 [DC Cir], cert denied 377 US 978). It is clear that, in this case, the most significant of these interests are the first two.
Contrary to the majority view, I think it hardly necessary for the State to enact a statute or regulation reciting society’s interest in preserving human life in order for this court to recognize that such an interest exists. To my knowledge, neither our court, nor any other, has ever before refused to give consideration to this undeniably paramount societal interest on the ground that the legislative and executive branches have not explicitly stated that it exists. Likewise, we needn’t wait for a statute or regulation saying that third parties should be protected in order to give effect to the State’s unquestionable interest in the welfare of a patient’s minor children.
The same is true, I believe, where a patient’s objection to medical treatment is based upon the guarantee of religious *238 free exercise under the State or Federal Constitution. I agree with Judge Simons that interference with religious convictions, including the nonconsensual administration of a lifesaving medical procedure contrary to one’s sincerely held religious beliefs, may be justified only upon a showing of compelling State interests which render the procedure necessary under the circumstances (see generally, Ware v Valley Stream High School Dist., 75 NY2d 114). But, it must be emphasized, the right to refuse medical treatment asserted on the basis of religious liberty is not absolute. Like the right asserted as a matter of personal privacy, the religious-based right is qualified by the same countervailing societal interests. For that reason and others already discussed, I believe that neither the assertion of a patient’s rights nor the identification of competing societal interests can, without a delicate balancing, be decisive of whether a lifesaving medical treatment should be ordered.
As previously noted, I agree that, because there was no emergency in this case, there should have been a hearing before any judicial action was taken affecting the patient’s personal privacy and religious liberty. Moreover, because the patient’s right to refuse medical treatment is not absolute— whether based upon constitutional or common law — but is subject to qualification in the presence of compelling societal interests, a hearing was necessary to determine exactly what those interests were and whether or not they were sufficient to override the patient’s wishes.
In cases such as this, where a hearing is feasible, the court must, in my view, weigh the competing individual and societal interests in light of all the relevant circumstances. Among the factors the court must consider are: the precise nature, extent and intensity of the patient’s objection to the proposed medical treatment; the type, invasiveness and effects of that treatment; the nature of the patient’s illness; the necessity or not of the treatment; the patient’s prognosis with and without treatment; the age, maturity and understanding of the patient; the welfare of the patient’s family, particularly their dependency on the patient and the impact on them if treatment is withheld.
In a given case, circumstances that might weigh in favor of court-ordered medical treatment include: the fact that the patient is young and healthy; that her illness is curable; that the proposed treatment is relatively painless, noninvasive and *239 routine; that the treatment is essential to the patient’s life or well-being; that the patient has dependent children; and that the patient’s objection consists of a refusal to consent rather than an outright demand that treatment be withheld. On the other hand, circumstances that might dictate a court’s refusal to order treatment include: the fact that the prognosis, even with the proposed treatment, is poor; that the treatment is painful, invasive, complicated or not actually necessary; that the patient has no dependents; and that the patient’s religious or privacy objection is directed against the treatment itself, not merely consenting to it.
In any particular case, the court ought necessarily to examine and weigh all of the relevant factors in order to reach a sound judgment. And once that judgment has been made, appeals courts — removed from the exigencies, the parties and the unique medical and personal considerations involved— ought to be most hesitant to disturb it unless arbitrary or irrational. In my view, such an approach to these most difficult matters is preferable to a rigid, absolutist rule which recognizes no countervailing State interests, including the fundamental societal one of preserving life.
Judges Kaye, Alexander, Titone and Bellacos a concur with Chief Judge Wachtler; Judges Simons and Hancock, Jr., concur in separate opinions.
Order affirmed, with costs.

. To be sure, the majority acknowledges that the "right [to refuse medical treatment] is not absolute and in some circumstances may have to yield to superior interests of the State.” (Majority opn, at 226.) But the majority then holds that, at the present time, that right is unqualified under the circumstances presented here because the State has not "manifested its commitment” to any life-preserving interest applicable to this case (see, id., at 227; see also, id., at 227-228 ["there is no statute requiring an individual to submit to medical treatment even when the treatment is necessary to save the individual’s life”]; id., at 230 ["the hospital can point to no law or regulation”; "the State has * * * never expressed” an interest; there is an "absence of any statute or decision from this court limiting the rights of patients who happen to be parents”]).
Notwithstanding the majority’s characterization of its position (majority opn, at 231, n 3), I believe that the analysis in its opinion can only be understood as predicated on a right which, under presently existing law, is unqualified absent a statute or regulation identifying some countervailing societal interest.

. It is, of course, the duty of the physician to render treatment which, in his judgment, benefits the patient (Oath of Hippocrates; Hippocrates’, Articulations 78). Current opinion No. 2.21 of the Council on Ethical and Judicial Affairs of the American Medical Association, 1989, states, in part, "unless it is clearly established that the patient is terminally ill or permanently unconscious, a physician should not be deterred from appropriately aggressive treatment of the patient”.