**DAVIS, Admrx., et, Plaintiff, v. EUBANKS, and MERCY HOSPITAL ASSOCIATION, Defendants.**

Common Pleas Court, Franklin County.

No. 194274. Decided February 15, 1960.

Louis M. Day, W. W. Stanhope, E. F. Moats, Chillicothe, for plaintiff.
Gingher & Christenson, for defendants.

## OPINION

By GESSAMAN, J.

This case is now before the court on the separate demurrers of the plaintiff to the first and second defenses of the defendants' joint answer.

The substance of the allegations of the second amended petition are that the plaintiff's decedent was admitted to Mercy Hospital on or about April 19, 1954, as a patient and that at that time the defendant, Ruth Eubanks "was acting, in the treatment of the deceased, Daisy Snyder, in the capacity of registered nurse." It is further alleged that the plaintiff's decedent was operated on April 21, 1954, and that while she was recovering from said operation, the Mercy Hospital Association through the defendant, Ruth Eubanks, undertook to administer treatment by the injection of penicillan and that in so doing, she "negligently administered said penicillan by injection in the lower quadrant of the buttox rather than in the upper quadrant, as instructed by the said Daisy Snyder's physician, thereby injuring and damaging the soft tissue * * * all to Daisy Snyder's damage."

In the amended joint answer of the defendants, the first defense is the usual defense now interposed by a hospital. The second defense reads as follows:

"Defendants say that this action was not brought within the time limited by law for the commencement of such actions."

In the brief filed in support of the demurrers, nothing has been submitted by counsel for the plaintiff in support of the demurrer to the first defense of the joint answer. This is in violation of Rule III, Par. 2 of this Court in which it is provided in part that "An opening brief shall be filed with each motion or demurrer * * *." We therefore assume that counsel for the plaintiff either are abandoning or do not

wish to press the demurrer filed to the first defense of the joint answer. That demurrer, therefore, is overruled.

In support of the demurrer to the second defense, counsel for the plaintiff have cited only 34 O. Jur. 2d, Sec. 54. This statement is based upon the case of **Wishnek et al v. Gulla, 52 O. O. 111,** in which Judge Merrick of the Court of Common Pleas of Cuyahoga County, referred to the case of Isenstein v. Malcomson, 236 N. Y. S., 641, in which the Court held that the term "malpractice" had no "possible application to a nurse."

The Statute of Limitations here involved is §2305.11 R. C., which provides in part as follows:

"An action for * * * malpractice * * * shall be brought within one year after the cause thereof accrued * * *."

In view of the fact that the second amended petition does not set forth the date upon which the injection of penicillan is claimed to have been made, the question of the defense of Statute of Limitations, has of necessity been raised by answer. The question presented is, therefore, as to whether or not a registered nurse in this state can be guilty of malpractice.

Other than the Isenstein case to which we have above referred and which was decided by the Supreme Court, Appellate Division of New York, on November 1, 1929, we have found and have been referred to no reported cases on this question. It appears, therefore, that the question is being presented to the Court at this time as a matter of first impression in this state. The case of Wishnek v. Gulla, supra, involved the question as to whether or not a licensed surveyor of the State of Ohio could be guilty of malpractice. Anything said by Judge Merrick in his opinion with respect to nurses, was pure obiter dictum.

In 19 A. L. R. 1191, we find the following general statement with respect to nurses:

"With respect to nurses on the staff of a hospital it has been held that, although they are its 'servants for general purposes, they are not so for the purposes of operations.' When assisting at an operation, they 'cease, for the time being, to be the servants of the defendants, inasmuch as they take their orders during that period from the operating surgeon alone, and not from the hospital authorities.' "

While this statement is in no sense decisive of the question here presented, we feel that it is worthy of consideration in view of the allegation in the second amended petition to the effect that the injection of penicillan was made in the lower quadrant of the buttox rather than in the upper quadrant "as instructed by said Daisy Snyder's physician, * * *." It is apparent from this allegation that counsel for the plaintiff take the position that the defendant, Ruth Eubanks, the registered nurse, was at the time and place in question acting upon the instructions of Daisy Snyder's physician rather than under the instructions of the defendant Hospital Association. In 60 A. L. R. 304, reference is made to the case of Schloendorff v. Society of New York Hospital, 211 N. Y. 125 (decided in 1914), and in that reference we find the following quotation:

"* * * The hospital undertakes to procure for the patient the services

of a nurse. It does not undertake, through the agency of nurses, to render those services itself. The reported cases make no distinction in that respect between the position of a nurse and that of a physician, * * * and none is justifiable in principle. * * *"

In the analysis of the question presented in this case, consideration should be given to a definition of the term "malpractice." We find the following in Bouvier's Law Dictionary:

"Bad or unskillful practice in a physician or other professional person, whereby the health of a patient is injured, is usually called malpractice."

It would seem to follow, therefore, that the basic question here presented is as to whether or not a registered nurse is practicing a profession.

On May 3, 1915, H. B. 323 was filed with the Secretary of State of Ohio and in due course became part of the law of this state. It was denoted subsequently as §§1295-1 to 1295-20 GC. In those statutes the term "practice nursing" is used in one form or another many times. The first provision is found in §1295-5 GC, in the following provision:

"On and after January 1, 1916, no person shall practice nursing as a registered nurse in this state without first complying with the requirements of this act."

The provisions of the original House Bill have continued as law of this state, with various amendments, and at the present time are known as §§4723.01 to 4723.14 R. C., inclusive. In those provisions we not only find the term "practice nursing" still used several times, but we also find that the General Assembly has referred to it as a profession. In §4723.01 R. C., the General Assembly has given to the Governor the right to remove any member of the State Nurses Board for unprofessional conduct, among other reasons. This "unprofessional conduct" refers to the eight members of the Board, five of which are registered nurses and three of which are practical nurses. Sec. 4723.06 R. C., defines the term "registered nurse" and in it we find the recognition by the General Assembly that one who is practicing nursing is engaged in a profession. That section reads in full as follows:

"A registered nurse is one who possesses a blend of intellectual attainments, attitudes, and manual skills based on the principle of scientific medicine acquired by means of a prescribed course in a school of nursing affiliated with a hospital recognized for such purposes by the state and practiced in conjunction with curative or preventive medicine by an individual licensed to do so by the state. A 'registered nurse,' 'trained nurse,' or 'graduate nurse,' or person using the initials 'R. N.,' 'T. N.,' or 'G. N.,' or symbols of like import, therefore, is one who has met all the legal requirements by registration and who practices or holds a position by virtue of her professional knowledge and legal status."

In §4723.10 R. C., the General Assembly has referred to "an approved school of professional nursing, * * *."

The statutes just referred to were adopted effective January 1, 1956, which is probably after the act of Miss Eubanks alleged in the second amended petition. However, the professional status of a registered nurse in this state was recognized by the General Assembly as far

back as 1942 when §1347-8 GC, was reenacted. Reference therein was made to "her professional knowledge." The same language was re-enacted into §4723.06 R. C., effective October 1, 1953. In both of these enactments the term "practice of nursing" is used several times in various ways.

From a careful consideration of the various sections of the law from the time of its enactment in 1915 to the present day, it seems clear that the General Assembly of this state has recognized that one who is practicing nursing as a registered nurse, is practicing a profession. In our opinion, no other conclusion can be reached. It therefore follows that a registered nurse falls within the category of "other professional person" referred to in the definition of malpractice hereinabove referred to.

In the Isenstein case, supra, no statutes similar to those of Ohio which we have reviewed, were involved in the decision. At least the Court did not refer to any. Because of that distinction, it is our opinion that the Isenstein case does not dispose of the question presented in the instant case. It is our feeling that the terminology that has been used by the General Assembly since the enactment of House Bill 323 in 1915, must be considered in determining whether or not a professional nurse in Ohio is practicing a profession.

For the reasons which we have given, it is our considered opinion that a registered nurse in this state is engaged in the practice of a profession. As such, therefore, a registered nurse in this state can be guilty of malpractice.

Obviously it is our conclusion that the second defense of the amended joint answer of the defendants is well pleaded. What the facts are, of course will have to be determined at the time of trial. Our conclusion would be that if the evidence discloses that the act complained of in the second amended petition was performed by Ruth Eubanks more than one year prior to the date upon which the petition was filed in this case, then the action against her at least would be barred.

In the second amended petition it is alleged that "The Mercy Hospital Association, through the defendant, Ruth Eubanks, its employee, under-took to administer treatment by the injection of penicillin, * * *." In view of the fact that the plaintiff seeks to hold Mercy Hospital Association only because of the act of "its employee," it would necessarily follow that if the employee were not liable, the Mercy Hospital Association like-wise would not be liable. It is said in 34 Am. Jur. 299, that "A statute that bars a claim against an agent equally protects those in whose behalf he acted as agent where there are no circumstances of equity to prevent the operation of the statute in their favor." In our opinion no such cir-cumstances appear in this case. Plaintiff has alleged that the injection of penicillin by Ruth Eubanks was done under an order of the decedent's physician. No claim is made that the defendant hospital participated in the slightest in said order. Our opinion is that since the Statute of Limi-tations is effective as a bar to an action against the employee, the regis-ered nurse, it is also effective as a bar against an action against the em-ployer, the defendant hospital.

For the reasons which we have given, the demurrer to the second defense is overruled.