MORRIS, EXRX., APPELLANT, *v.* MONTEREY YORKSHIRE NURSING INN, INC., APPELLEE.

[Cite as Morris v. Monterey Yorkshire Nursing Inn (1971), 29 Ohio App. 2d 98.]

(No. 71-98—Decided August 17, 1971.)

*Mr. Phillip M. Walther* and *Mr. B. N. Murray,* for appellant.

*Messrs. Wiles, Doucher & Tressler,* for appellee.

TROOP, P. J. The trial court sustained a motion to dismiss the complaint of Ruth F. Morris, executrix, against Monterey Nursing Inn, Inc., for the reason that it had not been filed within the time prescribed in R. C. 2305.11. The entry reflecting the finding of the court was filed March 8, 1971. It is from that judgment that this appeal is taken on questions of law.

Plaintiff, the appellant herein, bottoms her appeal on

a single assignment of error, *i. e.*, that the trial court erred in dismissing the complaint for the reason indicated. The assignment of error is well taken.

In the memorandum in support of the motion to dismiss the complaint, counsel for the defendant, appellee herein, contends that the services offered by a nursing home are those of a general hospital and that Judge Gessaman, in *Davis, Admrx.*, v. *Eubanks and Mercy Hospital Assn.* (1960), 83 Ohio Law Abs. 28, held that a hospital was like a nurse or a physician so far as malpractice is concerned. It is further suggested by counsel that plaintiff alleges that the defendant was "guilty of withholding medical aid," and therefore the one-year statute of limitations applies. These contentions need be examined.

Without argument, if the plaintiff alleged malpractice, and the act of the defendant through its employees was that of a professional person, such as a physician, then the one-year statute of limitations applies. If, on the other hand, the plaintiff alleged negligence and the act complained of was in fact negligence, then the two-year statute of limitations applies.

First of all, it must be said that a nursing home is not a hospital.

The legislature has taken great care in dealing with institutions providing personal care and attention in the enactment of R. C. Chapter 3721. The definitions section, R. C. 3721.01, contains some pertinent pronouncements. First, note that a "home" means an institution:

"* * * which does in fact provide accommodations and personal assistance, to three or more persons, who are dependent upon the services of others, or which provides skilled nursing and dietary care for persons who are ill or otherwise incapacitated, or which provides services for the rehabilitation of persons who are convalescing from illness or incapacitation, and which is not a 'hospital' as defined under section 3701.07 of the Revised Code nor a public hospital or hospital as defined in section 5122.01 of the Revised Code. * * *"

More specifically, in subparagraph (A) of the same section, it says that a "nursing home" is a home where the persons served "require skilled nursing care." There then appears a definition, as follows:

"Skilled nursing care means those procedures commonly employed in providing for the physical, emotional and rehabilitation needs of the ill or otherwise incapacitated which require technical skills and knowledge beyond that which the untrained person possesses, including * * *."

The introductory paragraph of R. C. 3721.01 indicates that the "homes" about which it speaks are not "a hospital" as defined in R. C. 3701.07, nor a public hospital, or hospital, as defined in R. C. 5122.01.

R. C. 3701.07, states:

"The director of health may define and classify hospitals and dispensaries. Every hospital and dispensary, public or private, shall, annually, register with, and report to, the department of health, on forms furnished by the director, such information as he may prescribe."

And, R. C. 5122.01 (F) reads as follows:

" 'Hospital' means a public or private hospital or institution, or part thereof, equipped to provide in-patient care and treatment for the mentally ill, licensed by the division of mental hygiene."

If the statutes themselves do not provide clear definitions and distinctions are not clearly drawn, the legislature provided for further refinement in R. C. 3701.07, giving the director of health the power to define. Pursuant to the authority provided in R. C. 3701.07, the director of health, under date of December 31, 1955, did define a hospital, and the definition still stands. The director defines a hospital as follows:

"Any establishment or place in which:

"1. There are two or more beds; facilities and services are continuously maintained for care of non-related persons who are ill.

"2. Services offered are more intensive than those required for room, board, personal services, and general nursing care,

"3. The patient's stay averages longer than 24 hours per admission.

"4. The medical diagnosis and treatment of the patient is the responsibility of a physician licensed by the State of Ohio.

"5. The medical staff of three or more physicians is organized under appropriate bylaws, rules and regulations.

"a. When the medical staff consists of less than three physicians, there is evidence of regular medical supervision of patient care.

"6. Registered nursing services are available at the hospital throughout each 24 hour period.

"7. Records of all clinical work are maintained by the hospital on all patients and are readily available for review.

"8. Surgical or obstetrical facilities and/or diagnostic and treatment facilities for medical patients are available at the hospital.

"9. X-ray services are regularly and conveniently available to patients.

"10. Clinical laborataory services are regularly and conveniently available to patients."

Some of the requirements are strikingly descriptive as to a "hospital," particularly items 7 through 10. It would be a rare nursing home indeed that would have in it "obstetrical facilities," even if all of the other facilities, surgical, diagnostic, x-ray, and clinical laboratory, are regularly and conveniently available.

Defendant relies for support upon *Davis, Admx., supra;* in fact, it is the sole authority cited. It should therefore be noted. Davis, Administratrix, brought an action against Eubanks, a registered nurse, employed by Mercy Hospital, for negligently administering penicillin to the plaintiff's decedent. The court said the nurse was engaged in the practice of a profession and fell within the category of professional persons referred to in the definition of malpractice contained in Bouvier's Law Dictionary.

R. C. 4723.06 defines the practice of professional nurs-

ing, and specifies acts to be performed by a physician through the prohibition of their commission by the nurse. The section reads as follows:

" 'Practice of professional nursing' means the performance for compensation of acts requiring substantial judgment and specialized skills based on knowledge and application of scientific principles learned in an approved school of professional nursing. Acts of medical diagnosis or prescription of medical, therapeutic, or corrective medical measures by a nurse are prohibited."

Secondly, the complaint of the plaintiff clearly sounds in ordinary negligence, contrary to appellee's contention that there is a suggestion of malpractice, as counsel puts it, in an allegation that the defendant was "guilty of withholding medical aid." The allegation is that defendant was informed of the physical condition of plaintiff's decedent, *i. e.*, "osteoperosis and non-union of a prior hip injury," for which reason defendant was directed to call Doctors Gallen and Benjamin Wiltberger "in event of injury or sickness to the patient." The further allegation is that the patient fell while attempting to go to the rest room and was injured and the physicians were not notified as directed, nor was the complainant herself. The failure to notify the doctors was simple negligence, and resulted in "withholding medical aid and attention," causing "the decedent's pain and suffering to continue unabated."

This allegation falls far short of the allegation in *Davis* charging a breach of a professional duty by negligently administering penicillin to a patient.

An interesting annotation, 89 A. L. R. 2d 1180, should be noted because it refers to the *Davis* case. At page 1181, the annotators state, as to the one-year statute of limitations: "* * * it has been assumed without discussion that the statute applies to an action against a hospital for malpractice of an employee." As illustrative of the proposition stated, two Ohio cases are cited, *Davis, supra,* and *Klema, Admx.,* v. *St. Elizabeth's Hospital of Youngstown* (1960), 170 Ohio St. 519, which was decided in 1960 as was *Davis.*

The decision in *Klema* contributes to this review not only because it sheds light upon the proposition advanced by the annotators but, also, by reason of its similarity in fact pattern to the case before this court. The patient in St. Elizabeth's died as a result of the malpractice of an anesthetist employed by the hospital. A wrongful death action followed. The Supreme Court held that the action could not be defeated by the one-year statute of limitations which would have been applicable if the patient had lived and he would himself have filed a malpractice suit.

Another Supreme Court decision in *Corpman* v. *Boyer* (1960), 171 Ohio St. 233, follows a similar vein. A husband filed an action, predicated upon injury to his wife resulting from the malpractice of a physician, in which he sought damages for medical services, loss of consortium and loss of services. The court held that it was not one in malpractice and that the one-year statute of limitations did not apply.

In the case here for review, the second cause of action alleged by the plaintiff is for wrongful death and, according to the decisions in *Corpman* and *Klema, supra,* cannot be defeated by the one-year statute of limitations.

Even if the defendant herein, Monterey Yorkshire Nursing Inn, Inc., were in fact a hospital, which we have said it is not, the Supreme Court supplies the applicable rule in its decision in *Richardson* v. *Doe et al.; Good Samaritan Hospital* (1964), 176 Ohio St. 370. The syllabus there reads as follows:

"A negligence action against a hospital based on the doctrine of *respondeat superior* for the negligence of a nurse is subject to the two-year statute of limitations for bodily-injury actions."

(See, also, 9 A. L. R. 3d 1331.)

The underlying fact was that licensed nurses, employed by Good Samaritan, permitted a patient to hemorrhage for eight hours after discovery without notifying the patient's physician.

In *Richardson*, at page 372, the court calls attention to the fact that R. S. 4983, the predecessor to R. C. 2305.11,

was amended to include malpractice in the one-year statute of limitations, at which time, the court said: "* * * the common meaning and legal definition of the term, 'malpractice,' was limited to the professional misconduct of members of the medical profession and attorneys." And then the decision quietly but definitely inters, at 372, the doctrine advanced in *Davis,* as follows:

"Today, the term, malpractice, is sometimes used loosely to refer to the negligence of a member of any professional group. However, legally and technically, it is still subject to the limited common-law definition. * * *"

By way of emphasis, the court then adds (page 373) that there is no compelling reason to give nurses the protection of a one-year statute of limitations.

The owner or proprietor "of a private hospital or sanitarium which is operated for profit, and is not a charity, is liable for injuries to patients due to the negligence of employees." (28 Ohio Jurisprudence 2d 62, Section 53.)

The judgment of the trial court is reversed and the cause remanded for further proceedings according to law and in accordance with this decision.

*Judgment reversed and cause remanded.*

STRAUSBAUGH and HOLMES, JJ., concur.