MARY E. LEE, Appellant, v. GLENS FALLS HOSPITAL, Respondent.

Third Department, March 3, 1943.

*J. Clarence Herlihy* (*Delon F. Mousaw* of counsel), for appellant.

*Lorenz J. Brosnan* (*William F. Martin* and *Robert J. Bell* of counsel), for respondent.

CRAPSER, J. This is an appeal from a judgment based upon the granting of a motion to dismiss the complaint on behalf of the defendant.

The complaint alleges that the defendant's agents, servants and employees were negligent in the care that they gave to the plaintiff and through such negligence she sustained injuries while a patient in the defendant hospital. It was conceded by the appellant at the trial that the defendant hospital is and was in fact a charitable institution, which allegation was made in the answer of the defendant.

The testimony showed that on January 5, 1940, the appellant fell in her home and sustained a fracture of the femur and was taken to the defendant hospital. On January 6th, her personal physician, Dr. Sheldon, operated to reduce the fracture and following the operation the appellant was returned to her room in the surgical ward of the hospital. The appellant was making considerable noise and was disturbing the other patients in the ward and on January 6th, at about eight-thirty in the evening, her doctor again called upon her. He found that they had " put side boards on her bed," which are employed to keep a patient from falling out of bed. He found that the patient was very irrational and that she did not know what she was doing. She did not recognize her physician or where she was. She was mentally unbalanced at that time and her physician ordered her moved out of the ward. They did not have any room to which to move her and the doctor suggested the moving of another patient of his from the other side of the hall, but they could not get the bed out of the room and so he ordered her moved into the solarium. She was the only patient in the solarium that night. About eight-thirty the next morning her physician was called and notified that she had fallen out of bed and that the doctor at the hospital had seen her and examined her and put her back in bed and was asked to come and see her as soon as possible.

The night before, the doctor had talked to the nurse in charge and he had also talked with Miss Converse, who was night supervisor of nurses, in regard to moving the patient into the solarium. He told Miss Converse that it was all right to move the patient into the solarium and for her to have a close watch kept of the patient. He told Miss Converse, who asked him about putting someone on to watch her, that it would not be necessary, that she had side boards on her bed and pins on her leg and would not be liable to get out.

From the time the patient was moved to the solarium until three-thirty A. M. on January 7th, she was quiet and raised no disturbance, she appeared to be sleeping. During that period the patient was observed by not less than five nurses, all of whom testified that during that interval she was quiet and never made an attempt to get out of bed and that each of them observed her at frequent intervals.

At about three-thirty A. M. one of the nurses noticed that the patient had been picking at the dressing over the operative wound and had removed the same. She had become noisy and the physician from the hospital was summoned and with the aid of the nurses she was given a drug. From three-thirty A. M. she was constantly attended by a nurse until a few moments before she fell out of bed.

Dr. Adams ordered that another sedative be given the patient at five-thirty on the morning of January 7th. This sedative was sodium luminol given hypodermically. The patient then quieted down and Miss Thomas remained with her up to six-forty A. M. when she was relieved by Miss Brooks. A few minutes before seven A. M. Mrs. McCormick, the assistant supervisor of nurses, decided that the patient was quiet enough to be left alone and the nurse left her in order to perform some other duties. In a very few minutes the patient got out of bed or fell from her bed.

The evidence shows that there was no order from Dr. Sheldon to have the patient constantly watched. His orders were carried out and registered nurses only were engaged in caring for the patient. The evidence shows that there was an ample number of them on duty to comply with the needs of the patient. There is no evidence that the patient's injuries were sustained by reason of the negligence of anyone. Her condition, immediately prior to the accident, was deemed to be such that in the judgment of the professional nurses who observed her, she could be left alone. All of the persons involved in taking care of her were professional persons and were acting in a professional capacity in the course of their nursing duties in caring for and attending to the medical welfare of the patient.

The record shows clearly that the nurses were engaged solely in the performance of the professional act of caring for the patient. There is no question but that the nurses employed were competent and that they carried out the physician's orders. The only trouble that they had with the patient was the tearing off of the bandages covering the operative wound. Those bandages were put on again by Dr. Adams of the hospital staff.

The defendant hospital fulfilled its obligations. It placed the patient in a suitable and safe place as ordered by her doctor. It furnished ample nursing facilities to the patient and her physician. There was no special nurse ordered on the case by her doctor. His orders were carefully carried out. The hospital's obligations were fulfilled according to all the evidence in the record.

The relation between a hospital and its physicians is not that of master and servant, but merely to procure them to act upon their own responsibility. When nurses or physicians are treating a patient they are not acting as servants of the hospital. It is true that the superintendent, assistant superintendent, orderlies and members of the administrative staff are servants of the hospital; but nurses are employed to carry out the orders of the physician, to whose orders they are subject. The hospital undertakes to procure for the patient the services of a competent nurse; it does not through the agency of the nurses render those services itself. (*Schloendorff* v. *New York Hospital*, 211 N. Y. 125; *Daniele* v. *Missionary Sisters of Sacred Heart*, 260 App. Div. 1002; *Andrews* v. *Roosevelt Hospital*, 259 App. Div. 733.)

The plaintiff's action is based entirely upon negligence. The plaintiff seeks to argue on her part that there was a contractual obligation entered into between the plaintiff and the defendant, but the plaintiff has conceded that the defendant is a membership corporation organized under the Membership Corporations Law for the purpose of maintaining a hospital, not for profit.

The case of *Steinert* v. *Brunswick Home, Inc.* (259 App. Div. 1018) in which leave to appeal to the Court of Appeals was denied (284 N. Y. 822), is a case in which the liability of a private-for-profit institution was involved. The negligence complained of consisted of a nurse's act in preparing a solution to be injected as an anæsthetic. She used a caustic solution instead of the anæsthetic that had been called for by the attending physician resulting in serious injury to the plaintiff's testate. The Appellate Division in affirming the dismissal of the com-

plaint by the trial court stated: " Upon the undisputed facts it is clear that the act of the nurse was part of the treatment of the patient and not an administrative or clerical act for which the defendant hospital can be held responsible." The court cited the following cases: (*Schloendorff* v. *New York Hospital*, 211 N. Y. 125; *Matter of Renouf* v. *N. Y. C. R. R. Co.*, 254 N. Y. 349; *Mieryjeski* v. *Bay Ridge Sanitarium, Inc.*, 237 App. Div. 851.)

Viewing all the evidence in the case as most favorable to the appellant no question was presented for the jury's consideration under the cases hereinbefore cited. The judgment appealed from should be affirmed with costs.

HEFFERNAN, J. (concurring). On January 5, 1940, plaintiff fell in her home and sustained a fracture of the femur and was removed to defendant hospital where she became a paying patient. On the following day her physician reduced the fracture and she was then removed to the surgical ward. During the evening she became irrational, disturbed the other patients and at the direction of her physician was removed to defendant's solarium. After her removal she was quiet until three-thirty A. M. on January 7, 1940. During that period she was observed by nurses. At about three-thirty A. M. a nurse discovered that plaintiff had removed the dressing from the operative wound. She became noisy and the house physician gave her a drug. At about five-thirty A. M. the doctor gave her another sedative. She was under the constant supervision of nurses until about seven-thirty A. M. She was then left alone for a few minutes and during that interval she fell out of bed and received the injuries to recover for which this action is brought.

It is conceded in this case that defendant is a charitable corporation established for the care of sick and indigent persons. The fact that it receives compensation from some of its patients, as in the case of plaintiff, does not affect in any respect its eleemosynary character or liability as a public charity. Defendant undertakes not to heal or attempt to heal through the agency of physicians and nurses but merely to supply them in order that they may minister to the needy on their own responsibility. In this State an exception to the doctrine of *respondeat superior* has been adhered to consistently. Doctors and nurses, so our courts have held, are not the agents and servants of a charitable corporation, but rather independent contractors for whom the hospital has provided a place to aid the suffering.

It may well be that charitable corporations should not be immune from liability for the torts of their agents. The Court

of Appeals has taken a long step in that direction in *Sheehan* v. *North Country Community Hospital* (273 N. Y. 163). Notwithstanding the court's pronouncement in that case it is still the law of this State that a charitable corporation will be held liable for the torts of its mere servants or agents, but not for those whom the court considers to be independent contractors, such as physicians, surgeons, nurses, professors, instructors and the like, if it has exercised reasonable care in their selection and retention. The doctrine of *respondeat superior* cannot be invoked as to them, because there is no relationship of master and servant upon which to predicate it. To enable such an institution to protect itself behind the shield of immunity it is only necessary to show due care in the selection and retention of those who serve it in the capacities indicated. (*Schloendorff* v. *New York Hospital*, 211 N. Y. 125; *Matter of Bernstein* v. *Beth Israel Hospital*, 236 N. Y. 268; *Phillips* v. *Buffalo General Hospital*, 239 N. Y. 188; *Hamburger* v. *Cornell University*, 240 N. Y. 328; *Mills* v. *Society of New York Hospital*, 270 N. Y. 594; *Steinert* v. *Brunswick Home, Inc.*, 259 App. Div. 1018, leave to appeal denied, 284 N. Y. 822; *Andrews* v. *Roosevelt Hospital*, 259 App. Div. 733; *Daniele* v. *Missionary Sisters of Sacred Heart*, 260 App. Div. 1002.)

It is not without significance that plaintiff's action is predicated solely on the negligence of defendant's nurses. There is no contention that defendant was negligent in the selection of its nurses; in fact, it is not even asserted that defendant's nurses were incompetent. Negligence in this case, if negligence there be, which is extremely doubtful, is bottomed solely on the negligence of defendant's nurses. Defendant, on the record before us, is not answerable for the tortious acts of its nurses.

The cases relied on by plaintiff (*Volk* v. *City of New York*, 284 N. Y. 279; *Dillon* v. *Rockaway Beach Hospital*, 284 N. Y. 176; *Sheehan* v. *North Country Community Hospital*, 273 N. Y. 163) have no application here. In the *Volk* case it was undisputed that the hospital furnished a drug unfit for use. In the *Dillon* case the plaintiff was burned by an illuminating lamp, entirely unrelated to treatment, which had been left in his bed by an attendant while plaintiff was in the operating room. In the *Sheehan* case an ambulance driver was negligent in the operation of an ambulance while removing the plaintiff to her home after she had been discharged from the hospital as a patient.

The judgment appealed from should be affirmed.

BLISS, J. (dissenting). The immunity of a charitable institution from liability to a beneficiary for personal harm caused by

the negligence of its employees was laid at rest in our jurisdiction in *Sheehan* v. *North Country Community Hospital* (273 N. Y. 163). This change was there said to be in harmony with the now declared public policy of the State that persons damaged by the torts of those acting as its officers and employees need not contribute their losses to the purposes of government. This change was later confirmed in *Dillon* v. *Rockaway Beach Hospital* (284 N. Y. 176) where the court said: "Indeed, it is now settled that even a charitable hospital is liable for the acts of its servants." We are now called upon to determine whether an outgrowth of such former immunity shall be continued and perhaps broadened or shall be restricted within its exact limits as previously laid down. I refer to the exemption of such a hospital from the rule of *respondeat superior* with respect to its nurses when acting professionally.

Plaintiff suffered a fracture of the femur and became a paying patient in the defendant hospital. Following an operation for the reduction of the fracture she became irrational and had to be removed from a ward and placed alone in the solarium in a bed with the side boards up. Her physician instructed the hospital night supervisor to have a close watch kept of the patient. This was at about eight-thirty P. M. During the night the plaintiff became very restless and attempted to remove the dressing from the wound and at least two sedatives had to be administered. Shortly before seven A. M. the nurse employed by the hospital and who was in charge of the plaintiff, asked the night supervisor for permission to leave the patient, which was granted, and the patient was left alone. A few minutes later the patient was found on the floor at the foot of the bed. She had apparently climbed over the side boards and fallen to the floor. This action was brought to recover for the damages caused by such fall. The trial court declined to submit the issues to a jury at the close of the entire case and dismissed the complaint upon the theory "of at least partial immunity which the law has given to hospitals of a charitable character" and also that the doctrine of *respondeat superior* did not apply to medical treatment by the defendant's nurses so long as reasonable care had been exercised in their selection.

The liability of a noncharitable hospital for injuries to patients for lack of proper care is well established. The hospital is held to the duty of ordinary care in the treatment and protection of its patients and the cases are numerous in which such hospitals have been held responsible for failure to properly attend and watch delirious patients. Absence of a nurse from

the room of a patient who is delirious, even for five minutes, may amount to negligence. (*Wetzel* v. *Omaha Maternity & General Hospital Assn.*, 96 Neb. 636; *Mulliner* v. *Evengelischer Diakonniessenverein*, 144 Minn. 392.) In the instant case the failure of the hospital employees to follow the instructions of plaintiff's physician, coupled with full knowledge on the part of such employees of her condition and the other surrounding facts, such as the removal of the patient from the ward and the administration of sedatives, followed by leaving the plaintiff unattended, were more than ample to make out a *prima facie* case of negligence. The case should have been submitted to the jury unless the defendant does not have to respond for the neglect of its supervisor and nurse in thus leaving the plaintiff alone and giving her opportunity to harm herself while delirious.

There are two answers to the defendant's claim that it is not responsible for the acts of its nurse. *First,* watching this patient and preventing her from harming herself was. not a medical function. It was a duty which any hospital attendant, nurse or not, could have performed. Such duty is daily performed in our State hospitals for the insane by guards or attendants and does not require medical education or professional ability. Consequently the nurse who left plaintiff alone was not acting in a professional capacity when she did so, and the hospital is chargeable with her negligence.

In *Volk* v. *City of New York* (284 N. Y. 279) there was quoted with approval a statement by KENNEDY, L. J., in *Hillyer* v. *Governors of St. Bartholomew's Hospital* ([1909] 2 K. B. 820) as follows: " It may well be, and for my part I should, as at present advised, be prepared to hold, that the hospital authority is legally responsible to the patients for the due performance of their servants within the hospital of their purely ministerial or administrative duties, such as, for example, *attendances of nurses in the wards,* the summoning of medical aid in cases of emergency, the supply of proper food and the like." (Italics mine.) But if there is any doubt as to the responsibility of the hospital for the neglect of the nurse there can be none as to the supervisor who authorized the nurse to leave. She was performing a purely administrative function. She was not in attendance upon the plaintiff. She was the hospital authority, acting for the hospital and quite apart from caring medically for plaintiff, and was in control of plaintiff's nurse — not herself the nurse. There is no doubt about the hospital's being responsible for her failure to see that plaintiff had proper attention.

*Secondly,* now that the charitable immunity doctrine has been abolished there is no longer sound reason why a hospital should not be responsible for the acts of its employees, the same as is practically every other employer. Even the State is now responsible for the acts of its doctors and nurses and its failure to guard or watch over its demented patients. This makes for better administration of the institutions and a closer attention to duty. In *Liubowsky* v. *State of New York* (260 App. Div. 416 [Third Dept.], affd. without opinion, 285 N. Y. 701) the doctrine of *respondeat superior* was held to apply to the State as to a death caused by the negligence of a pharmacist, a nurse and a physician, all State employees attending the deceased who was a patient in a State hospital. The applicability of this doctrine to the State was specifically discussed by Mr. Justice CRAPSER in the prevailing opinion and he stated that the doctrine did apply, while Mr. Justice FOSTER dissented upon the sole ground that the State was not liable to a patient in one of its hospitals for the torts of physicians and nurses if the hospital had used proper care in the selection of such physicians and nurses. Other similar cases holding the State liable are *Luke* v. *State of New York* (253 App. Div. 783) in which a patient in a State hospital for the insane, while confined in a ward with sixty-two other patients with only two attendants present, was assaulted by another patient and injured and the State was held liable, and *Dimitroff* v. *State of New York* (171 Misc. 635) where a potential violent mental case with known homicidal and suicidal tendencies was left unattended in a State hospital and he committed suicide. It was there held that the State was negligent in not providing proper supervision.

In *Schloendorff* v. *New York Hospital* (211 N. Y. 125) Judge CARDOZO discusses the doctrine of *respondeat superior* as applied to hospitals. He states: " Certain principles of law governing the rights and duties of hospitals when maintained as charitable institutions have, after much discussion, become no longer doubtful. It is the settled rule that such a hospital is not liable for the negligence of its physicians and nurses in the treatment of patients. [Citations.] This exemption has been placed upon two grounds. The first is that of implied waiver. It is said that one who accepts the benefit of a charity enters into a relation which 'exempts one's benefactor from liability for the negligence of his servants in administering the charity. * * * The second ground of the exemption is the relation subsisting between a hospital and the physicians who serve it. It is said that this relation is not one of master and servant, but

that the physician occupies the position, so to speak, of an independent contractor, following a separate calling, liable, of course, for his own wrongs to the patient whom he undertakes to serve, but involving the hospital in no liability if due care has been taken in his selection.''

Neither of these reasons now supports the extension of immunity to the defendant in the present case. The waiver doctrine was repudiated in *Phillips* v. *Buffalo General Hospital* (239 N. Y. 188.) In actual practice there is no waiver and governmental and charitable immunity has been abolished. A nurse, employed by the hospital and completely under its direction and control is in no sense an independent contractor.

The same rule now applies to all hospitals, *i. e.,* the patient is accepted under an implied agreement that he will receive such reasonable care and attention as the hospital knows or should know his condition to require. There is no longer any good reason why a hospital, charitable, public, or otherwise, should not be responsible to paying patients for the neglect of all of its employees — medical as well as administrative. The patient has no choice in their selection. But we need not go that far in this case. The neglect of the supervisor alone requires a reversal and a new trial.

HEFFERNAN and SCHENCK, JJ., concur with CRAPSER, J.; HEFFERNAN, J., concurs in a separate opinion, in which CRAPSER and SCHENCK, JJ., concur; BLISS, J., dissents, in an opinion in which HILL, P. J., concurs.

Judgment and order affirmed, with costs.