JOSEPH T. MORWIN, Respondent, *v.* ALBANY HOSPITAL, Appellant, et al., Defendant.

Third Department, April 23, 1959.

*Maynard, O'Connor & Smith (John A. Murray, F. E. Lehner and Gerald W. O'Connor),* for appellant.

*John E. Roe* for respondent.

REYNOLDS, J. The defendant-appellant, Albany Hospital, appeals from a judgment of the Albany County Court entered against it, upon a jury verdict of $2,500 in favor of the plaintiff-respondent. Appellant was held liable on the doctrine of *respondeat superior* for the alleged negligence of its assistant resident anesthetist, in the performance of an endotracheal intubation (a method of administering anesthesia) in connection with an operation to remove a large parapharyngeal space abscess in respondent's mouth near the upper left molar. It is necessary in an endotracheal intubation to insert a tube into the mouth or nostrils, then through the trachea and into the lungs. In order to find the opening to the trachea at the back of the throat a laryngoscope is used. This instrument is lighted and the anesthetist can depress the tongue and observe the trachea. Due to the abscessed condition, respondent's mouth could only be partially opened which made it more difficult than usual to insert the laryngoscope. During this procedure, respondent's upper right central incisor tooth was broken off.

In the early part of 1955 the respondent had, for several months, been under the care and treatment of Dr. Cleary, a dentist, for the condition of his mouth. His gum tissues were badly inflamed and infected. There were some teeth that were badly decayed and broken down. His condition was described as pyorrhea alveolaris, which is a breakdown of the bone structure around the roots of the teeth. After a series of gingivectomies, removing the gum tissue around the teeth and the regeneration of new gum tissue, his condition improved immensely but a molar on the upper left side of his mouth developed an abscess. Dr. Cleary gave him antibiotics but the swelling continued and he became unable to open his mouth as far as he could normally. On February 28, 1955 Dr. Cleary sent the plaintiff to Dr. Van Gaasbeek, a doctor and dentist specializing in oral and facial surgery. Dr. Van Gaasbeek, after observing the condition, had respondent admitted to the appellant hospital on the same day. He gave instructions that respondent be given an endotracheal anesthesia. Dr. Sullivan who was an assistant resident in anesthesia at the hospital

administered the anesthesia in the course of which, as stated above, he knocked out respondent's upper right central incisor tooth. The uncontradicted evidence was that this was a sound tooth.

Respondent sued Albany Hospital on the theory of *respondeat superior* considering the way cleared by the Court of Appeals' decision in *Bing* v. *Thunig* (2 N Y 2d 656). The case was sent to the jury which found for respondent. Appellant moved to dismiss the complaint upon respondent's opening, at the close of respondent's case, and at the close of the entire case. Decision was reserved. After the verdict appellant moved to set it aside. All these motions were subsequently denied.

Appellant contends the rules and law pertaining to malpractice apply to this case and that when the acts complained of constitute professional acts requiring expertise the jury cannot possibly be legally capable of evaluating the question of negligence in the absence of testimony to the effect that what was done was negligent, or could have been done better, or another way, etc. Respondent takes the stand that *Bing* v. *Thunig* (supra) applies as to the question of negligence as well as to ultimate liability. This is predicated on the closing words of that decision (p. 667) which reads: " The hospital's liability must be governed by the same principles of law as apply to all other employers." The Trial Judge subscribed to this theory as evidenced by his opinion. As appellant states, if this theory is to obtain, jurors will be able to pass upon highly technical matters not conceivably within their sphere of knowledge just as they are now passing on questions of negligence connected with auto accidents (which concededly are within the range of common knowledge).

In our view *Bing* v. *Thunig* (*supra*) did not overthrow the legion of New York cases dealing with malpractice, most of which did not concern hospitals or *respondeat superior* at all. *Bing* v. *Thunig* (*supra*) says we may now hold a hospital for the negligent acts of its employees whether medical or administrative and that the theory of the independent contractor, as applied to a staff doctor, is wrong. It says no more, no less. To prove the negligence, in many instances, it will not be necessary to get into the realm of malpractice. Thus, the leaving of an inflammable substance spilled on sheets (*Bing* v. *Thunig, supra*); the application of a scalding hot water bottle to a patient (*Phillips* v. *Buffalo Gen. Hosp.,* 239 N. Y. 188); an electric light left negligently under the sheets by an attendant (*Dillon* v. *Rockaway Beach Hosp.,* 284 N. Y. 176); failure to have sideboards placed on the bed (*Lee* v. *Glen Falls Hosp.,* 265

App. Div. 607; *Ranelli* v. *Society of N. Y. Hosp.*, 269 App. Div. 906); a mistakenly administered blood transfusion (*Necolayff* v. *Genesee Hosp.*, 270 App. Div. 648); and a mistaken dispensing of drugs and medicines to patients (*Volk* v. *City of New York*, 284 N. Y. 279) are all cases of negligence easily discernible by a jury on common knowledge. True, the medical-administrative distinction is gone, but that relates only to the hospital's liability and not to the quality of the act said to be negligent. A layman may easily determine whether the placing of a scalding hot water bottle against a patient was a negligent act, but can he adequately determine whether or not a delicate operation had been performed properly? Dr. Sullivan testified that at the point he felt the tooth giving way he decided to continue with the intubation because: " A. A person who has an abscess on the side of his jaw or neck, particularly, when it is of large size, the patient is rendered unconscious and his defense of coughing stopped and that being taken away, the danger is that may rupture and break as many abscesses will do, either to an outside surface or inside surface and it would be difficult to predict what it would be. That abscess might break into the patient's mouth and airway and drown him in pus as does water in a drowned person. That is the abscess might asphyxiate him."

In the light of the exigencies presented by the circumstances as related by Dr. Sullivan, should a layman be able to judge whether or not Dr. Sullivan's conduct in continuing with the intubation was negligence when there was an absence of expert testimony to the effect that it was?

Malpractice is a peculiar kind of negligence. It is difficult of proof. The jury must usually be presented evidence educed from the testimony of conflicting experts. In *Pike* v. *Honsinger* (155 N. Y. 201, 210) it was stated: " The rule requiring him [the doctor] to use his best judgment does not hold him liable for a mere error of judgment, provided he does what he thinks is best after careful examination."

In order to hold a hospital liable under *Bing* v. *Thunig* (*supra*) there must be negligence. If the acts complained of as being negligent are such as require professional skill and knowledge then it is a case of malpractice. Being malpractice, the case must conform to the evidential rules long invoked in such cases. Any argument that *Bing* v. *Thunig* (*supra*) altered the standard of proof in malpractice cases is without foundation.

The charge insofar as it related to negligence was general and did not encompass the rules and law relating to malpractice cases

and therefore was erroneous. The subsequent granting of certain requests relating thereto did not, in our view cure the error, but served merely to confuse the issues.

The admission of certain evidence in the testimony of Dr. Cleary, respondent's witness, also requires reversal. Dr. Cleary, a dentist, was allowed to testify, among many other general things concerning anesthesia, that anesthetic by endotracheal intubation could have been safely administered to the respondent in connection with the operation herein. Dr. Cleary was wholly unqualified to testify on this subject, which was vital.

Further in the charge in reference to Dr. Cleary's testimony: "In order to find any negligence on the part of the hospital from Dr. Cleary's testimony, disregarding other things in the case, you would have to find that the hospital should have employed a different form of anesthesia than was used    *    *    *. As far as his testimony is concerned, the only possible basis of finding negligence from it would be the method of anesthesia that was employed." There was no evidence in the record upon which the jury could have found from Dr. Cleary's testimony that a different form of anesthesia should have been employed, and a verdict based upon either theory would be erroneous.

While *res ipsa loquitur* was mentioned by respondent's counsel in the record, this case was not tried on that theory, and we are not passing on its applicability. (Cf. *Benson* v. *Dean,* 232 N. Y. 52; *Meyer* v. *St. Paul–Mercury Ind. Co. of St. Paul,* 225 La. 618; *Leonard* v. *Watsonville Community Hosp.,* 47 Cal. 2d 509.)

In view of the above we need not consider the other alleged errors in the trial.

The judgment should be reversed on the law and the facts and a new trial ordered.

Coon, J. P., Gibson and Herlihy, JJ., concur.

Judgment reversed, on the law and facts, and a new trial ordered, with costs to appellant.