OPINION OF THE COURT
Eli Wager, J.
This is the trial of a wrongful death action held before the court with a jury. Plaintiffs’ action is grounded upon allegations of medical and psychiatric malpractice committed by the defendant hospital and staff psychiatrist. The alleged acts of malpractice are centered about the release of the former wife of the plaintiff who sues for the wrongful death of their three children, ages eight, six and four. The children were suffocated by their mother on or about August 1, 1972, approximately seven weeks after her discharge from the defendant Medical Center on the authority of the defendant psychiatrist.
During the course of the plaintiffs’ case, plaintiffs proffered the testimony of a purported expert witness,, one Dr. Stephen Richard Grossman, a licensed psychologist. Upon objection timely made by the defendants to the competency and qualifications of Dr. Grossman, the court held a hearing out of the *229 presence of the jury and inquired into the training, experience and qualifications of Dr. Grossman.
As a result of the hearing conducted by this court and having heard the testimony of Dr. Grossman in camera, the court finds that the proffered witness has never worked as a psychologist in a general hospital such as the Nassau County Medical Center or indeed in any general hospital. He is not now on the staff of any hospital. He has no admitting privileges at any hospital and his hospital experience is limited to his residency at the Rikers Island Correctional Institute in the City of New York, a hospital maintained for the benefit of prisoners there incarcerated.
The issue thus presented to the court was one of first impression in New York. Research discloses no case directly on point in this State.
The issue is a succinct one: is a licensed psychologist competent to testify as an expert witness in a medical malpractice action against a psychiatrist and/or hospital where the issue is the alleged departure from good and accepted medical and/ or psychiatric practice? For the following reasons, the court sustains the defendants’ objection and excludes the proffered witness’ testimony.
In the first instance, the qualifications of an expert witness and the witness’ competence to testify before the trier of the facts in a jury trial is solely within the reasonable discretion of the trial court (Meiselman v Crown Hgts. Hosp., 285 NY 389; Karasik v Bird, 98 AD2d 359 [1st Dept 1984]; Richardson, Evidence § 368 [10th ed]). In a medical malpractice case it is the plaintiff’s burden to present expert testimony to establish a prima facie case of malpractice (Koehler v Schwartz, 48 NY2d 807, 808; 530 E. 89 Corp. v Unger, 43 NY2d 776, 777; McDermott v Manhattan Eye, Ear & Throat Hosp., 15 NY2d 20, 24).
In a medical malpractice case the requirements for expert testimony are more narrowly defined than in any other form of tort litigation. This State has established a special statutory scheme applicable to such cases. Judiciary Law § 148-a establishes the statutory medical malpractice panel and mandates the submission of conflicting contentions of the parties prior to trial to a panel composed of a justice of the Supreme Court, a lawyer and a medical doctor. In the case at bar, such a medical malpractice panel was convened consisting of a psychiatrist, a justice of the Supreme Court and a lawyer. No *230 finding was rendered by that panel. However, the trial itself could not take place until the panel’s review of the case was completed.
New York laws distinguish between the professional practice of psychiatry and psychology. Different statutes apply to each professional discipline. Psychologists are licensed and governed by Education Law, article 153, § 7600 et seq. and in particular section 7603 which sets forth the requirements for a professional license in psychology.
Psychiatry is governed by Education Law, article 131, § 6520 et seq. which regulates all areas of medical practice. A psychiatrist is, in the first instance, a licensed medical doctor and in the case at bar, the defendant Dr. Julius Marcus was a licensed medical doctor with a specialty in the field of psychiatry.
The distinctions between the two professions are not subtle ones. It is not simply a medical degree that distinguishes these professionals. However, at bottom, psychiatry is a medical discipline whereas psychology is not. Clearly, there is a relationship between the two professions in that each deals with human emotions and personality, with mental illness, mental health and with the broad complexities of the human mind. The practice of each profession, however, is distinctly different from the other. Psychologists are more involved in testing as well as in psychotherapy, but are not permitted to prescribe medication and may not commit a patient to a mental hospital without either a certificate signed by two physicians in an involuntary commitment or under the auspices of a psychiatrist or medical doctor on a voluntary basis. In-hospital treatment of mental patients is generally under the supervision of psychiatrists under whose authority psychologists may work in an assisting or consulting capacity. Such treatment modalities as electro-shock therapy are solely within the domain of psychiatrists.
In the hearing conducted by this court on Dr. Grossman’s competency to testify, he acknowledged the foregoing limitations upon his ability to treat mental patients. He also acknowledged the broader scope of the psychiatrist’s authority in actual practice. Yet, in this case, Dr. Grossman is offered by the plaintiffs as an expert witness to testify to alleged departure from good and accepted psychiatric practice which allegedly occurred during the care and treatment of the mother of the three deceased infant children.
*231 In support of their argument, the plaintiffs, having found no applicable New York cases, have directed this court’s attention to Durflinger v Artiles (563 F Supp 322 [US Dist Ct, Kan 1981], affd 727 F2d 888 [10th Cir 1984]). Durflinger was a wrongful death action against a hospital and physicians who participated in a decision to discharge a patient who thereafter killed the plaintiff’s wife and sons. During the conduct of that trial the court permitted the testimony of a psychologist as an expert for the plaintiff to testify to the standard practice or duty of care of the defendants. In that case and in that State, Kansas, a psychologist is apparently subject to the same distinct differences in practice that distinguishes psychologists from psychiatrists in New York. The licensing procedure for psychiatrists is likewise different from that of doctors. However, the defendants urged unsuccessfully that the trial court should not have permitted a psychologist to testify as an expert witness on the issue of standards of care.
A careful reading of the Durflinger case discloses a unique factual pattern which distinguishes it from the case at bar. It appears that the psychologist expert witness was on the staff of one Kansas State hospital which was similar to another State hospital at which the defendants were employed. The expert witness as well as the defendants were members of one of two teams of psychologists and psychiatrists. The teams were designated as "Pinel” teams and apparently operated at each hospital under the same set of standards and practices. Moreover, one of the defendants in that action was a psychologist (in addition to the psychiatrist defendants). In denying a motion for a new trial, the trial judge held that the decisions in question in that case were not medical decisions but psychological ones. Moreover, he held the psychologist witness to be competent "both by education and by experience.”
In affirming the trial court’s denial of the motion for a new trial, the Tenth Circuit Court of Appeals held (727 F2d 888, 890-891, supra): "We are in agreement with the trial court on this. This is not a case in which medical training or competence is at issue. The defendant physicians were members of a team engaged in psychological inquiry. Indeed, one of the original defendants, who settled before trial, was a clinical psychologist. All the team members agreed to discharge Bradley Durflinger, and all considered the same historical and diagnostic information. The decision involved psychological rather than medical inquiry, and a clinical psychologist such as Dr. O’Connor has competence to testify on the proper *232 standards applicable to such a decision. The trial judge did not abuse his discretion in admitting Dr. O’Connor’s testimony.” Critical to the determination in the Durflinger case was the fact that the psychiatrists and psychologists who were members of the "Pinel” teams in the two State hospitals operated under the same set of rules, the same principles and conduct the same 'psychological inquiry and practices. Each "Pinel” team was composed of a mix of psychiatrists and psychologists in pursuing their related team goals. The factual pattern in the Durflinger case, accordingly, is unique in that, with reference to the issue in that case, the experience of the proffered witness was identical to that of the psychiatrist defendant. At bar, there is no comparable factual pattern. There is no identity of experience upon which the proffered witness can ground his claim to competency.
This court is guided in its determination by several New York cases which, although not directly on point, set forth the principles upon which the issue must be decided. In Gibson v D’Amico (97 AD2d 905 [3d Dept 1983]), the court held at page 905: "It has long been the recognized rule of law that in order to establish a prima facie case of liability in most medical malpractice actions, a plaintiff must prove through expert medical opinion (1) the standard of care in the locality where treatment occurred, (2) that defendant breached that standard of care and (3) that the breach of the standard was the proximate cause of injury (see, e.g., McDermott v Manhattan Eye, Ear & Throat Hosp., 15 NY2d 20, 24; Meiselman v Crown Hgts. Hosp., 285 NY 389; McDermott v Manhattan Eye, Ear & Throat Hosp., 26 AD2d 519, affd 18 NY2d 970; Morwin v Albany Hosp., 7 AD2d 582; 2C Warren, Negligence in the New York Courts [3d ed], Physicians and Surgeons, § 13.02, pp 830-831).” In Taormina v Goodman (63 AD2d 1018), the testimony of a medical doctor was offered as an expert against a defendant chiropractor. The Appellate Division, Second Department, held that a medical doctor not being a member of the chiropractic discipline was not competent to testify to the alleged malpractice of a chiropractor. The rationale of our Appellate Division’s decision is significant (63 AD2d, at p 1018): "In the instant action to recover damages predicated upon the malpractice of a chiropractor, plaintiffs’ proof at the trial did not include the testimony of any chiropractic experts, but rather medical doctors, whose knowledge of chiropractics was admittedly quite limited. The testimony of these doctors only served to establish defendant’s deviation from a medical *233 standard of care in his treatment of the plaintiff husband. Accordingly, there was no competent trial evidence upon which the jury could have predicated its finding (in accordance with the court’s charge) that defendant had failed to exercise 'that degree of care that a reasonably prudent chiropractor would exercise under the circumstances.’ Under present New York law, the practice of chiropractic is separate and distinct from the practice of medicine (see Education Law, art 132; Vidra v Shoman, 59 AD2d 714), so that a physician’s standard of care can no longer be considered controlling upon a chiropractor in the practice of his profession (cf. Brown v Shyne, 242 NY 176).”
Applying the principle of Taormina to the case at bar, where a medical discipline is in issue, a nonmedical person cannot be permitted to offer testimony to a jury to establish what the proper medical and/or psychiatric standard of care was in this case and what, if any, departures from that standard of care were committed by the defendants. See also, Darby v Cohen (101 Misc 2d 516), where a physician was ruled incompetent to testify as to the standard of care of a podiatrist.
There is a second aspect to the objections raised by the defendants to the testimony of Dr. Grossman. The expert witness, if otherwise qualified and competent, must testify to a standard of care to which the defendant psychiatrist and hospital were bound, in 1972, in their community. Defendants argue that because Dr. Grossman was a graduate student in the Masters degree program in psychology in 1972 and was not then in actual practice, he is not competent to testify as an expert witness on that ground. Plaintiffs urge, however, the holding in Keane v Sloan-Kettering Inst. (96 AD2d 505 [2d Dept 1983]). In Keane, the Appellate Division ordered a new trial based in large part upon the trial court’s error in curtailing the testimony of the plaintiff’s expert witness. Particularly, plaintiff’s expert was asked to identify a diagnostic procedure utilized by the medical profession in 1952. Upon objection, the court elicited from the witness that he was admitted to practice medicine in 1971. Accordingly, the trial court sustained objections to the witness’ testimony thus excluding the witness from effectively establishing the defendant’s deviation from proper and approved medical practice. The Appellate Division apparently concluded that it was within the competence of a medical doctor expert witness to testify to the existence and availability of the diagnostic tool, *234 in that case cytology, although the doctor was admitted to practice medicine 19 years later.
The question at bar, however, is not quite the same as that in Keane (supra). In addition to the fact that Dr. Grossman was not a licensed psychologist in 1972, having been first licensed in 1980, he is not now, nor was he ever a medical doctor. He was never connected with any hospital from which by profession or by experience he could be considered competent to testify as to the psychiatric standard of care then extant in the community involved. It is unreasonable to assume that in 1972, at a time when he was a student earning his Masters degree in psychology he could have acquired or could be competent to testify to the standards of psychiatric care then pertaining in the Nassau County community.
This court by its determination on this motion does not intend to impugn Dr. Grossman’s credentials as a psychologist in the practice of his profession. However, his qualifications as an expert witness in this case on the facts at bar before this court and jury are quite another matter.
Defendants’ motion, accordingly, is granted.