529 So.2d 307 (1988)
Margaret CROSS, As Personal Representative of the Estate of Amos Cross, Deceased, Appellant,
v.
LAKEVIEW CENTER, INC., and E.K. Allis, M.D., Appellees.
No. 87-00165.
District Court of Appeal of Florida, First District.
July 14, 1988.
Rehearing Denied August 12, 1988.
Stephen H. Echsner of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for appellant.
*308 Ted R. Manry, III, and Stephen H. Sears of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellee Lakeview Center, Inc.
John P. Townsend of Chesser, Wingard, Barr & Townsend, Fort Walton Beach, for appellee E.K. Allis, M.D.
BOOTH, Judge.
This cause is before us on appeal from a final judgment entered on a jury verdict finding that appellees were not negligent in releasing Peter Todd from University Hospital[1] before he was sufficiently recuperated from his psychiatric illness. Appellant asserts that the trial court erred in admitting the testimony of John Monahan, Ph.D., on the issue of the standard of care. Appellant also contends that the trial court erred in admitting testimony regarding the prediction of violent behavior.
On August 30, 1980, Todd was admitted to Baptist Hospital emergency room with a gunshot wound to his hand. He became hysterical and uncontrollable. The emergency room physician sedated Todd and arranged for two police officers to transport him to the locked ward at University Hospital. Amos Cross, appellant's husband, was one of the officers.
Appellee Dr. E.K. Allis, an employee of appellee Lakeview Center, Inc., admitted Todd into the psychiatric ward of University Hospital. Dr. Allis diagnosed Todd as having an explosive personality. On September 5, 1980, Dr. Allis discharged Todd, giving him a prescription for Thorazine.
On September 6, 1980, the police arrested Todd for shooting at the man who had injured his hand. A county judge released Todd on his own recognizance on September 8, 1980.
On the evening of September 12, 1980, Amos Cross responded to a family disturbance call at the home of Todd's father. Todd shot Officer Cross first as he walked up on the porch. Todd's second shot hit Officer Cross in the head and killed him. Todd chased his father around the house and killed him by shooting him in the back. Todd shot a second officer in the leg before that officer returned fire and wounded Todd.
Appellant Margaret Cross, as Personal Representative of the Estate of Amos Cross, deceased, filed an amended complaint against Dr. Allis and his employer, Lakeview Center, Inc., for negligently releasing Todd. The parties stipulated that the economic loss was $350,000 and proceeded to a jury trial.
Appellant presented testimony of three psychiatrists. Dr. Blackman opined that Dr. Allis's treatment of Todd did not meet the standard of care as evidenced by Dr. Allis's failure to order psychological tests which would have been helpful in properly diagnosing Todd as suffering from inherited schizophrenia. Dr. Blackman felt that Dr. Allis could have predicted that Todd would be violent, but not to Officer Cross in particular. Dr. Blackman stated he had the ability to predict violence 50 to 75 percent of the time. Dr. Blackman relied on studies done by the American Psychiatric Association and general knowledge in the profession to state that it is easier to predict violence in someone who had recently been violent as opposed to someone who had not been violent within 20 days.
Dr. Phillip V. Phillips testified for appellant that Todd's behavior after discharge was predictable in the sense that he would be a social problem. Dr. Phillips stated that even though psychologists say you cannot predict violence, he was willing to try. Dr. Phillips felt that if a patient made a direct threat to someone, it was predictable that the patient would be violent.
Appellee Lakeview Center, Inc. objected to the deposition testimony of appellant's expert, Dr. Gutman, on the ultimate issue of foreseeability. Appellant's attorney, Mr. Echsner, responded:
MR. ECHSNER: I think the issue may come up again with an expert witness that they intend to have testify exactly on that issue. Their doctor's a professor *309 who they're going to call as an expert in foreseeability and predicting dangerousness of patients and they want us to not read the depositions that these  of these experts for their opinion on the predictability of this man's explosive and violent behavior, yet in their case they plan to present an expert to testify on exactly the same issue.
Following the denial of the objection, the following testimony of Dr. Gutman was read to the jury:
Q. Doctor, do you have an opinion based on a reasonable degree of medical probability whether the results that occurred in this case or the incidents that happened the week after Mr. Todd was discharged were foreseeable in that Dr. Allis knew or should have known that Mr. Todd would explode in this type of behavior?
A. Yes, I feel that it was foreseeable.
Q. You say that it's foreseeable that he would explode in this type of behavior. Are you talking about shooting his father and a police officer?
A. A violent act was foreseeable.
On cross examination Dr. Gutman stated:
Q. Doctor, do you include killing as an instance of unpredictable, extraordinary acts of behavior?
A. Yes.
Appellees presented the testimony of Dr. David Tingle who opined that Dr. Allis met the appropriate standard of care in treating Todd. He agreed with Dr. Allis's diagnosis of explosive personality. Dr. Tingle said he personally would not have sought any further information on Todd's history beyond what Todd's father provided. He would not have kept Todd in the hospital any longer than Dr. Allis did because Todd was not suicidal, had not threatened anyone, and his illness, standing alone, did not require hospitalization. Dr. Tingle felt Todd had a problem controlling his temper.
Appellant's attorney asked Dr. Tingle questions regarding the predictability of violence and dangerousness. Dr. Tingle admitted that acts of recent violence meant they were likely to be repeated. Dr. Tingle maintained that a more complete history and more information on Todd would not have made a difference in Dr. Allis's diagnosis and treatment of Todd.
Appellees introduced the testimony of Dr. John Monahan, a Ph.D. in clinical psychology and a professor of the law of psychology and legal medicine at the University of Virginia law school. Dr. Monahan has written five books dealing in part with clinical prediction of violent behavior. There are some medical students attending the courses he teaches.
Appellant objected to Dr. Monahan's testimony as to the standard of care on the ground that Dr. Monahan did not qualify as a health care provider as defined in Section 768.59, Florida Statutes. Appellant objected to Dr. Monahan's testimony about the prediction of violence on the ground that the field of predictability of violence is not sufficiently developed to support expert testimony. The trial court overruled appellant's objection without specifically ruling whether the predictability of violence was a clearly established field.
Dr. Monahan testified that he was familiar with the standard of care and that Dr. Allis did not deviate from that standard in releasing Todd. Dr. Monahan stated that patients with explosive personalities did not qualify for civil commitment and that explosive personality was a plausible diagnosis for Todd given the information available. Dr. Monahan repeatedly stated that a history of violence is indicative of future violence but that Todd's father misled Dr. Allis by telling him that Todd had never been in trouble before. Dr. Monahan felt that psychological tests were useless in predicting who will be violent in the future. Dr. Monahan did not think Dr. Allis violated the standard of care by not ordering further psychological tests or by failing to make further inquiries into Todd's background.
Dr. Park Elliot Dietz, a psychiatrist who is a professor at the University of Virginia's schools of medicine and law, testified that Dr. Allis did not deviate from the standard of care in releasing Todd. Dr. Dietz agreed with the other experts that *310 recent violence is the best indicator of future violence, but that does not mean that a person who has recently been violent will probably be violent again. Dr. Dietz stated that violence could not be predicted except that short-term predictions could be made up to 24 hours. Dr. Dietz felt that there was no basis for Dr. Allis to have ordered further psychological tests for Todd. Dr. Dietz testified that Todd's criminal record confirmed Dr. Allis's diagnosis of explosive personality. Dr. Dietz felt Todd may have been dangerous but that he was not mentally ill. According to Dr. Dietz, Dr. Allis could not Baker Act Todd for having temper tantrums.
Drs. Dietz and Monahan worked together in evaluating John Hinckley after he shot President Reagan. Dr. Dietz actually testified for the federal government in that case. Dr. Dietz has written on the subject of predicting dangerousness. He has focused his life's work on criminal behavior and violence among criminals. A large part of his work involves the ability to predict violence, determining whether a person is dangerous, deciding whether a person is responsible for their crime, etcetera. Appellant accepted Dr. Dietz' testimony with no voir dire or objection.
The jury returned a verdict finding no negligence on the part of Dr. Allis which was a legal cause of Amos Cross's death. The trial court entered final judgment on the verdict.
The trial court erred in finding that Dr. Monahan met the threshold requirements of Section 768.45(2)(c)2, Florida Statutes. That section provides, in pertinent part, that a person may testify as an expert in any action if he:
2. Is not a similar health care provider pursuant to paragraph (a) or paragraph (b) but, to the satisfaction of the court, possesses sufficient training, experience, and knowledge as a result of practice or teaching in the specialty of the defendant or practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience, or knowledge must be as a result of the active involvement in the practice or teaching of medicine within the 5-year period before the incident giving rise to the claim. (emphasis added).
Dr. Monahan did not possess training, experience, or knowledge as a result of practice or teaching in a related field of medicine. Psychology may be a field related to psychiatry insofar as psychological testing is concerned, but psychology is not a field of medicine related to psychiatry.
A clinical psychologist is competent to testify to a person's mental condition. Ross v. State, 386 So.2d 1191 (Fla. 1980); Executive Car and Truck Leasing v. DeSerio, 468 So.2d 1027 (Fla. 4th DCA 1985); Reese v. Naylor, 222 So.2d 487 (Fla. 1st DCA 1969). Appellant acknowledges that Dr. Monahan's testimony was admissible under Section 90.702, Florida Statutes, as to whether psychological tests would have been helpful in making a diagnosis such as the one involved in this lawsuit. However, we find no authority in Florida which would allow Dr. Monahan to testify that Dr. Allis did not deviate from the psychiatric standard of care by not performing those psychological tests.[2]
Though the admission of Dr. Monahan's testimony concerning a medical doctor's standard of care was error, the facts as stated above do not show that the error was reversible. § 59.041, Fla. Stat. Dr. Monahan's testimony was cumulative to the testimony of Drs. Tingle and Dietz. Eckert v. Government Employees Insurance Company, 334 So.2d 119 (Fla. 3d DCA 1976). The testimony in question was not substantially different in character and effect from properly admitted evidence and resulted in no undue prejudice to appellant. The record below leaves no doubt that the error below was harmless. Division of Corrections v. Wynn, 438 So.2d 446, 449 (Fla. 1st DCA 1983).
*311 The second issue on appeal is whether the trial court erred in admitting testimony regarding the prediction of violent behavior. Under Kruse v. State, 483 So.2d 1383 (Fla. 4th DCA 1986), the party seeking to introduce expert testimony must first establish that the subject can support expert testimony with a reasonable degree of reliability. However, in the case below, appellant opened the door on this issue through the testimony of Drs. Blackman, Phillips, and Gutman. Thus, appellant waived any objection to rebuttal testimony on this issue. See Chenoweth v. Kemp, 396 So.2d 1122 (Fla. 1981).
In Hawthorne v. State, 470 So.2d 770 (Fla. 1st DCA 1985), this court recognized a trial court's broad discretion in determining the range of subjects on which an expert may be allowed to testify unless there is a clear showing of error. The ability to predict violence was a major issue below. Both sides presented expert testimony on this subject. The trial court overruled appellant's objections to Dr. Monahan's testimony, but appellant failed to secure a specific ruling on this issue. Under the facts of this case, we cannot say the trial court abused its discretion in admitting the testimony in question.
AFFIRMED.
SMITH, C.J., and NIMMONS, J., concur.
NOTES
[1] University Hospital is not a party to this suit, and there are no issues relating to sovereign immunity. § 768.28, Fla. Stat.
[2] We note that Durflinger v. Artiles, 563 F. Supp. 322 (D.Kan. 1981), is distinguishable here as it was in McDonnell v. Nassau, 129 Misc.2d 228, 492 N.Y.S.2d 699 (N.Y. Sup. Ct. Nassau County 1985).