**Willie CLISBY, Petitioner–Appellee, Cross–Appellant,**

v.

**Charlie JONES, Warden, Holman Unit, Alabama Department of Corrections, Respondent–Appellant, Cross–Appellee.**

No. 89–7209.

United States Court of Appeals, Eleventh Circuit.

July 25, 1990.

**1048**

Ed Carnes, John Gibbs, Asst. Attys. Gen., Montgomery, Ala., for respondent-appellant, cross-appellee.

Cathy S. Wright, Maynard, Cooper, Fierson & Gale, P.C., Tony G. Miller, Deborah J. Long, Birmingham, Ala., for petitioner-appellee, cross-appellant.

Before EDMONDSON and COX, Circuit Judges, and RONEY *, Senior Circuit Judge.

PER CURIAM:

In 1979, Willie Clisby, Jr. broke into the home of Fletcher Handley, a 58 year-old, handicapped man, stole eighty dollars from him, and killed him with an ax. After Clisby was convicted in accord with Alabama Code § 13–11–2(a)(4) of night-time burglary during which the victim is intentionally killed, the jury recommended, and the judge imposed, the death penalty. The chief issue in this case involves *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), and the competence of the psychiatrist who examined Clisby prior to the sentencing proceedings that led to Clisby's present death sentence. The district court granted habeas relief under *Ake*. We vacate that grant and remand.

Clisby's first death sentence, handed down in February 1981, was vacated by Alabama's highest court. Upon remand, the trial court granted a motion by Clisby's counsel for additional psychiatric examination.[1] The court appointed Dr. John Callahan, a psychiatrist affiliated with the University of Alabama School of Medicine in Birmingham.[2] Dr. Callahan examined Clisby twice over the course of several days and performed several tests on Clisby, as well as interviewing him. Dr. Callahan determined that Clisby was able to stand trial, that he understood the nature and the implications of the charges against him, and that he was aware of the requirements of law. Dr. Callahan also determined that Clisby suffered from no mental disorder except "possibly anti-social personality disorder."[3] In addition, Dr. Callahan found that Clisby may have been under the voluntary influence of alcohol or other mind altering drugs at the time of the crime. After an evidentiary hearing at which Dr. Callahan testified, the trial judge again sentenced Clisby to death in May 1983.[4] On the basis of Dr. Callahan's testimony, the sentencing judge recognized Clisby's personality disorder as a mitigating factor, although the judge determined that the ag-

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

1. Before the trial which led to Clisby's first death sentence, he had been examined twice by Dr. Robert Estock to determine Clisby's competency to stand trial and to aid in his own defense, and also to determine whether Clisby met the criteria for involuntary commitment.

2. The University provides psychiatrists to examine and evaluate defendants in county and city jails, as part of its public service. Dr. Callahan was paid by the University and received no payment from the county for his services. The services of Dr. Estock seem to have been provided under the same circumstances.

3. As Dr. Callahan explained, a person with an anti-social personality disorder has trouble con-

forming his conduct to the rules of society, is not respectful of the rights of others, and is unable to maintain employment for any length of time. It has been estimated that 91% of the "criminal element" are anti-social personality types. *Eddings v. Oklahoma*, 455 U.S. 104, 126–27 n. 8, 102 S.Ct. 869, 883 n. 8, 71 L.Ed.2d 1 (1982) (Burger, C.J., dissenting, joined by White, Blackmun, and Rehnquist).

4. After Clisby's appeal, the Alabama Supreme Court eventually affirmed this sentence. *See Clisby v. State*, 456 So.2d 99 (Ala.Ct.Crim.App. 1983); *Clisby v. State*, 456 So.2d 102 (Ala.Ct. Crim.App.1983); *Ex Parte Clisby*, 456 So.2d 105 (Ala.1984).

gravating factors outweighed the mitigating factors.[5]

Despite the appointment of a psychiatrist to examine Clisby for mitigating factors, Clisby says the state violated his rights; his argument is that the psychiatric assistance the state court afforded him was not timely enough to allow the advisory jury to consider the mitigating effect of the psychiatric evidence and that the psychiatric assistance was inadequate. In the light of *Ake* and our own precedent, particularly *Thompson v. Wainwright*, 787 F.2d 1447 (11th Cir.1986), we reject Clisby's arguments.[6]

■ Clisby first requested psychiatric evaluation for the purpose of mitigation after the jury had found him guilty and had recommended death. We therefore conclude that Clisby cannot base an *Ake* violation on the unavailability of psychiatric evidence of mitigating circumstances to the jury. *See Thompson*, 787 F.2d at 1459 (no right to psychiatric assistance at sentencing until such assistance is specifically requested).

Before Clisby's present death sentence was imposed, he filed a motion that said, in part, "it is necessary for a psychiatric examination to be performed upon the Defendant to substantiate his claim that various mitigating circumstances, and therefore, a defense to the imposition of the sentence of death exists...." The court ordered Clisby to be psychiatrically examined; before sentencing, Clisby underwent the two examinations by Dr. Callahan.

■ In *Ake v. Oklahoma*, the Supreme Court determined that, when a capital defendant has made a preliminary showing to the trial judge that the defendant's mental status is likely to be a significant factor in sentencing, the Constitution requires that a state must assure the defendant access to a competent psychiatrist. 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).[7] *Ake* requires "the provision of one competent psychiatrist." 470 U.S. at 79, 105 S.Ct. at 1094. As the Court noted, this does not mean a defendant is entitled "to choose a psychiatrist of his personal liking or to receive funds to hire his own." 470 U.S. at 83, 105 S.Ct. at 1092. We wrote in *Martin v. Wainwright* that *Ake* does not guarantee a defendant the right to a favorable psychiatric opinion. 770 F.2d 918, 935 (11th Cir.1985). *See also Silagy v. Peters*, 905 F.2d 986, 1013 n. 22 (7th Cir.1990); *Kordenbrock v. Scroggy*, 889 F.2d 69, 75 (6th Cir.1989); *Granviel v. Lynaugh*, 881 F.2d 185, 192 (5th Cir.1989). The clear meaning of *Ake* is that the State is required to provide only access to a neutral or independent competent psychiatrist.

■ We hold that the state meets its *Ake* obligation when it provides a competent psychiatrist. A competent psychiatrist is one who, by education and training, is able to practice psychiatry and who has been licensed or certified to practice psychiatry—that is, a properly qualified psychiatrist. *See In re Fichter's Estate*, 155 Misc. 399, 279 N.Y.S. 597, 600 (N.Y. Surrogate's Court 1935) ("competent" "having sufficient ability or authority; possessing the requisite natural and legal qualifications"); *Towers v. Glider & Levin*, 101 Conn. 169, 125 A. 366 (1924) (under Workmen's Compensation Act, "competent physician or surgeon," must have legal competency and competency in particular case, that is, person must be licensed to practice type of healing art he employed, and must be able to treat particular kind of injury in question by means of that art); *Mason v. Moore*, 73 Ohio St. 275, 76 N.E. 932, 935 (1906) (competent bookkeeper is "one who is qualified by education and experience to

---

**5.** The two aggravating circumstances were that the murder had occurred during a burglary and that the defendant had been previously convicted of another violent felony.

**6.** Because we believe Clisby's *Ake* claim fails in any event, we decline to reach the issue of whether or not *Ake* applies retroactively to final convictions, such as Clisby's, which predate *Ake*.

*See Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *Penry v. Lynaugh*, —— U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

**7.** For the purpose of this opinion, we will assume, without deciding, that Clisby made the requisite threshold showing under *Ake*.

examine and compare the various books kept by the bank, and trace the bearing of one entry upon another in the different books").

■ Under this standard, Dr. Callahan is a competent psychiatrist, for *Ake* purposes. He is a medical doctor and is licensed to practice in New York, Mississippi, and Alabama. He began a psychiatry residency training program at Cherokee Mental Health Institute in Cherokee, Iowa, and transferred to the University of Alabama for his third year of specialty training, from which program he graduated. During his residency, he worked with Dr. Estock in the psychiatric examination of prisoners. He had passed both the written and oral examinations for the American Board of Psychiatry and Neurology. At the time of the trial, he had been an attending assistant professor at the University of Alabama for several years and had worked at the Smolian Clinic at the University of Alabama in the outpatient clinic and in the crisis center. In addition, Dr. Callahan had been involved in the legal justice system and the psychiatric diagnosis of prisoners accused of crimes for approximately three and one-half years. He worked two and one-half days per week at the county and city jails, and thirty percent of his work related to this area of psychiatry. Thus, Dr. Callahan was a competent psychiatrist—by reason of his education, training, and licensure—to perform a psychiatric examination on defendant Clisby.

■ Defense counsel moved for Clisby to receive "a psychiatric examination to be conducted in light of those mitigating factors or circumstances set forth in Section 13A–11–13 (Alabama Code 1975)." The motion was granted, and Clisby was examined. The state provided a duly qualified psychiatrist not beholden to the prosecution and, therefore, met its obligation under *Ake*. Clisby now urges us to review the specifics of the particular examination he received from Dr. Callahan. But we decline to do that. We agree with the

Fourth and Seventh Circuits that nothing in *Ake* obligates the state to provide a psychiatrist who cannot commit malpractice. *Waye v. Murray*, 884 F.2d 765, 767 (4th Cir.1989); *Silagy v. Peters*, 905 F.2d at 1013.

By provision of a properly qualified psychiatrist to a defendant, the state affords the defendant a reasonable chance of success and reduces the risk of inaccurate resolution of issues of insanity or of other mental health questions to a level acceptable in a fair-minded society. *Ake* was chiefly based on the idea that an indigent capital defendant as a matter of ·fairness ought to have the same kind of assistance available to him as wealthy defendants have: the wealthy can afford to pay for psychiatric assistance. But even the wealthy defendant may employ a psychiatrist who negligently examines him. The burden on the state to provide a properly qualified psychiatrist is not too high, but to burden the state with legal responsibility for the errors, even the negligent errors, of properly qualified psychiatrists seems too much. A competent psychiatrist may err, or even negligently err, but the Constitution protects neither the rich nor the poor against that risk. We distinguish psychiatrists from legal counsel when it comes to questions of negligence. Psychiatrists may be widely used nowadays in criminal proceedings, but they are not so fundamental as legal counsel to the adversarial process. And, unlike legal counsel, psychiatrists are not mentioned in the Constitution.

Because psychiatry deals with the intangibles of the human psyche and human emotions, it is nearly always possible for a defendant to find one psychiatrist who will disagree with the opinion of another psychiatrist, and castigate the other as "incompetent" or as having performed "an incompetent psychiatric examination." [8] *See Waye v. Murray* at 767. This court declines to embark on a course that would lead to "a battle of the experts in a 'competence' re-

---

**8.** Because we hold that there is no constitutional right to non-negligent psychiatric assistance, we do not address the merits of Clisby's challenges to Dr. Callahan's examination and diagnosis. We observe, however, that Clisby tried to

support his attack on Dr. Callahan, a psychiatrist, with testimony from a psychologist. We strongly question whether the testimony of a psychologist could prove that the work of a duly licensed psychiatrist fell below the standards of

view" and compel courts to engage in "a form of 'psychiatric medical malpractice' review" as part of the direct and collateral review of cases in which an *Ake* claim is made. *See Silagy v. Peters*, 905 F.2d at 1013. As the Court of Appeals for the Seventh Circuit recognized, "The ultimate result would be a never ending battle of psychiatrists appointed as experts for the sole purpose of discrediting a prior psychiatrist's diagnosis." *Id.* at 1013.

In addition to granting relief on Clisby's *Ake* claim, the district court denied a number of his other claims. We affirm the denial of relief on those claims.[9] The district court, however, did not reach Clisby's arguments that Clisby's lawyer was ineffective in his approach to obtaining psychiatric assistance. This argument seems to deal in part with the lack of a request for psychiatric assistance for sentencing before the advisory jury had make its recommendation. When Clisby's trial took place, the Supreme Court had not yet handed down *Ake*. Therefore, it will be hard for Clisby to characterize his attorney's failure to structure his trial defense around *Ake* as ineffective. *Cf. Pelmer v. White*, 877 F.2d 1518, 1522 (11th Cir.1989) (no valid ineffectiveness of counsel claim found where counsel relied on recent decision of intermediate court of appeals although other courts had suggested law was otherwise). Still, we decline to decide this issue because the district court explicitly declined to reach it.

We VACATE the grant of habeas relief and REMAND for further proceedings consistent with this opinion.

reasonable care for psychiatrists. A psychiatrist is a physician; a psychologist is not. While psychology and psychiatry are related in that they both deal with the mind, they represent separate schools of thought and different approaches to mental health. As a matter of law, we might refuse to allow a licensed psychiatrist to be established as negligent or "incompetent" without expert testimony from a psychiatrist to that effect unless the negligence of the psychiatrist's treatment is readily apparent to a layman. *Cf. Cross v. Lakeview Center*, 529 So.2d 307, 310 (Fla.App. 1st Dist.1988) (psychiatric malpractice case); *McDonnell v. County of Nassau*, 129 Misc.2d 228, 492 N.Y.S.2d 699 (Sup.Ct.1985) (same).

9. These include a *Miranda* claim, a *Witherspoon* claim, a claim that he was not afforded proper notice of Alabama's death penalty procedures, a claim that the prosecution made improper closing arguments, and a *Strickland* claim based on his attorney's failure to raise some of these issues at trial and on direct appeal.